Taliaferro, J.
It is charged against the defendant that in open violation of existing laws and regulations appertaining to the markets of the city for vending provisions of various- kinds for the sustenance of the inhabitants, he is keeping a private market, at which he is selling meats and other articles of provisions contrary to the said laws and municipal regulations, and thereby endangering the peace and good order of the city, putting in jeopardy the cleanliness and salubrity and the health and quietude of the inhabitants thereof, and furthermore subjecting the said city to a pecuniary loss and injury in an amount greatly in excess of one thousand dollars. The plaintiff prayed that an injunction be granted restraining the defendant from keeping open and conducting a private market, as, alleged hv the petitioner, the defendant is doing in violation of law. A rule was served upon the defendant to show cause why the injunction prayed for should not he granted, and the defendant answered: That the act of 1874 of the Legislature, providing that no private market should be permitted at any place in the city within the distance of twelve squares of a public market, is unconstitutional and void, because it was procured by bribery and corruption; because its title does not disclose or indicate its purposes; that it violates the constitution of the United States •, because it creates an involuntary servitude; that it abridges the privi *418 leges and immunities of the citizens; that it deprives them of their property without duo process of law. The defendant contends that having taken his license under the act 134 of 1866 he is entitled to keep a private market at the corner of St. Peter and Decatur streets during the space of one year, beginning January 1, 1874, and ending thirty-first of December, 1874; that this right having once vested it can not be taken away. He further contends that the city is without interest, having sold the revenues of the markets for the year 1874.
The application of the plaintiff for an injunction was dismissed at his costs, and the plaintiff has appealed.
The act of the Legislature authorizing private markets for the sale of meats, fish, poultry, etc., was passed in 1866 ; that act directs that keepers of private markets shall pay the same license that is required from retailers of provisions. The words of the statute are: ‘‘ Prom and after the first of January, 1867, it shall be lawful for all persons, after they have obtained the license required for retailers of provisions, to open, and keep open at all proper hours of the day, private markets, stores, or stands in any part of the city of New Orleans for the sale of meats, game, poultry, vegetables, fruit and fresh fish, subject to the general sanitary ordinances of the City Council.”
By the act of 1870, enlarging the limits of the city of New Orleans, and to provide for thfe government and administration of the affairs of the city, power is granted to the city to establish market places; and through its department of commerce to have general superintendence of all matters relating to markets. The City Council is vested with full power and authority to make and pass such by-laws and ordinances as are necessary and proper “ to regulate and preserve the peace and good order of the city and provide for and maintain its cleanliness and salubrity not inconsistent with any law relating thereto.” On the second December, 1873, the City Council passed an ordinance making the license for private markets $300. On the twenty-sixth of February, 1874, the defendant in this case took out from the State a wholesale dealer’s license on the payment of one hundred dollars. This license was taken out near three months after the'passage of the city ordinance requiring a license of three hundred dollars from the keepers of private markets. In the same ordinance the license of wholesale dealers is fixed at one hundred dollars. If the defendant was bound to take a license from the city for keeping a private market it is clear that he has not done it. But he relies upon the license from the State under the statute of 1866. This statute, as to the amount of the license fixed for private markets, is not quite definite— the license is to be that which is paid by “retailers of provisions.” We do not find from the record nor from the statutes of 1866 what the *419 amount of that license was. We assume, however, that the defendant holds that his license as a wholesale dealer covers it whatever it maybe. Considering the act of the Legislature of 1866, together with the ordinance of the city of second December, 1873, passed more than two months before the date of the defendant’s license, we can not but consider his claim, to a license for the year 1874 at best as very questionable. It is not important that we should pass directly upon the question. A prominent ground of defense, and one upon which the judge a quo seems to have laid much stress, is that the city is without interest in the matter, having lea'sed or-farmed out the markets for the year 1874. We do not see that it follows because the city has leased the markets for the year 1874 it loses all interest in the management of them, in seeing that the laws and regulations concerning them are carried into effect. The act of 1874 makes it the duty of the city-through its administrator to take measures for carrying out the provisions of the act regulating private markets, and in any issue that may arise in acting under this authority the city would be competent to stand in judgment.
We pass now to the consideration of the most important question raised in this controversy. Has the Legislature the power to make the regulation which it has made by this act of twenty-sixth February, 1874, declaring that private markets shall not be established, con-' tinued, or kept open within twelve squares of a public market 9 This question, we think, must be answered in the affirmative. And the power arises from the nature of things, and is what is termed a police power. It springs from the great principle, “ solus populi suprema est lexP There is in the defendant’s case no room for any well grounded complaint of the violation of a vested private right, for the privilege, if he really possessed it, of keeping a private market, was acquired subordinately to the right existing in the sovereign to exercise the police power to regulate the peace and good order of the city, and to provide for and maintain its cleanliness and salubrity. By way of illustrating this necessarily existing power to regulate the number, location and management of markets, take the city of New Orleans, in a warm climate, located in a low district of country, surrounded by marshes and swamps, which, in the hot season, under favorable conditions, envelopes its large population in a malarious atmosphere. Under such circumstances the danger of epidemics becomes imminent. It behooves the city authorities at such periods to be on the alert to obviate local causes of disease within the limits of the city. Among such causes the decay of animal and vegitable matter is a prominent one. The markets, therefore, must on that account be strictly attended to, and such measures adopted in regard to them *420 as, in the judgment of the proper authorities, the public health may require. Suppose under such a condition of things it should be found necessary as a sanitary regulation to reduce the number of markets, to abolish some of them, and thereby avoid their becoming causes of disease. Suppose the lessee of a public market and the keeper of a private market should find the markets under their control abolished, closed or suspended, from considerations of public security and benefit, before the expiration of the time for which their licenses were to continue; could they be sustained by law in a demand to be permitted to continue and keep open the markets they had charge of, on the pretense that they had a vested right to keep them open 9 Surely not. Their private benefit and advantage would have to yield to the public advantage. It would be a perversion of the principles of organized society and of regulated liberty to permit an individual to continue a business or occupation endangering the public health in order that he might derive profit from such occupation. We presume it will not be denied that under circumstances of peril and emergency the lawmaker would have the right to abolish or suspend an occupation imperiling the public safety. This power is inherent in him. He may exercise it prospectively for prevention as well as pro re nata for immediate effect. It is within his discretion when to exercise this power; and persons under license to pursue such occupations as may, in the public need and interest be affected by the exercise of the police power, embark in those occupations subject to the disadvantages which may result from a legal exercise of that power. The act of the General Assembly of twenty-sixth February, 1874, entitled “An act to regulate the private markets in the city of New Orleans and for other purposes,” does not violate or infringe any vested right. It is not unconstitutional.
The defendant charges that the passage of the act was procured by bribery and corruption ; that it was conceived in fraud, and its title designed to defraud. This is ooram non, judiee. Courts will not be influenced by mere allegations of this kind, unsupported by any evidence whatever, to disregard the maxim uommaprcesmimntur reete esse acta
It is objected that the law of February 26, 1874, is unconstitutional and void, as being in violation of article 114 of the State constitution, which directs that “ every law shall express its object or objects in its title.” We think the objection without weight. The act has but one object, that one object is expressed in its title. The title misleads nobody. The words “ and for other purposes” are in the title to this act meaningless, for there is nothing else treated of in the act besides the regulation of private markets. Its purpose is simplex dimtaxat et unum.
*421 The act of February, 1874, abolishes all private markets located within less than twelve squares of a public market. To that extent it repeals the act of 1866 under which the defendant sets up his rights.It is shown that he is keeping a private market within one square of the French market, one of the principal public markets of the city. He is doing so in violation of law. We think the judgment of the-court a qua sustaining the defendant erroneous.
It is therefore ordered that the judgment of the district court be-annulled, avoided and set aside. It is further ordered that the injunction prayed for by the plaintiff be granted and perpetuated enjoining and restraining the defendant from opening, conducting, carrying on or continuing any private market or place of business for the sale of fresh meats, fresh fish, poultry, game, vegetables, etc., in the city of New Orleans, within the space, or distance of twelve squares of any public market under the jurisdiction and authority of the Administrator of Commerce of said city, and otherwise violating in any manner the provisions of an act entitled “An act to regulate the private markets in the city of New Orleans and for other purposes,” passed by the General Assembly of the State of Louisiana on the twenty-sixth of January, 1874. It is further ordered that the plaintiff recover from the defendant one hundred dollars, and that the defendant pay costs in both courts.