## THE STATE v. JOHN E. MOORE.

*Constitution—Statutes—Police Power.*

1. In the interpretation of statutes, it is the duty of the Courts to resolve every doubt in favor of their constitutionality, and to assume that the Legislature, in their enactment, acted in good faith for the public good.

2. The police power—the authority to establish such rules and regulations for the conduct of all persons as may be conducive to the public interest—is, under our system of government, vested in the Legislatures of the several States of the Union, the only limit to its exercise being that it shall not conflict with any of the provisions of State or Federal Constitution.

3. A statute which, by its terms, is confined in its operations to a particular locality, yet may be enforced against all persons who may come within its scope, is a public local statute.

4. Chapter 81, Laws 1887 (amended by chs. 187 and 319, Laws 1889), which makes it unlawful to buy, sell, deliver or receive seed cotton in any of the counties named, in quantities less than that usually contained in a bale, unless the contract is reduced to writing, signed by the parties in the presence of two witnesses, and entered upon the civil docket of the nearest Justice of the Peace within ten days thereafter, is an exercise of the police power by the Legislature, and does not conflict with either the State or Federal Constitution.

This was an INDICTMENT originating before the Court of a Justice of the Peace and tried on appeal in the Superior Court of NORTHAMPTON, at Fall Term, before *Boykin, J.*, for a violation of chapter 81, Laws of 1887, as amended by chapter, 321, Laws of 1889, in selling cotton contrary to the provisions of said chapters.

The jury impaneled in the Superior Court returned a special verdict as follows:

"We find that the defendant John E. Moore, at and in the county of Northampton, on the 25th day of September, 1889, received and purchased of James J. Martin and James Flythe, trading as Flythe & Martin, thirteen pounds of seed cotton, for which he paid said Flythe & Martin three cents per pound; that said sale was not reduced to writing and no record was made of it, as is required by section 2, chapter 81, Laws of 1887, and that thirteen pounds of cotton is less than what is required to make a bale of cotton; that if, upon this state of facts, the Court is of opinion the defendant has violated the law, then we find the defendant guilty as charged; otherwise, we find him not guilty."

The Court thereupon directed an entry of "not guilty" to be made, and gave judgment for the defendant. From the ruling of the Court, the Solicitor, on behalf of the State, appealed.

Section 1 of chapter 81, Laws of 1887, declares that it shall be unlawful for any person to sell, deliver *or receive* for a price, etc., any cotton in the seed, where the quantity is less than what is usually baled, except as hereinafter provided.

Section 2 requires that every such sale of seed cotton shall be in writing, signed by all the parties thereto, and witnessed by two witnesses, in a form laid down in said section, and further, said receipt shall be delivered, with a fee of twenty-five cents, to the nearest Justice of the Peace, whose

duty it shall be to docket the same on his civil docket for the inspection of all persons.

Section 3 of the same act provides that any person buying or receiving seed cotton, contrary to the provisions of this act, etc., shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding fifty dollars, or imprisoned not exceeding thirty days, etc.: *Provided*, that this act shall only apply to the counties of Anson and Richmond.

Chapter 327 of the Laws of 1889, provides that section 3, chapter 81 of the Laws of 1887 shall be amended by inserting the word "Northampton" after the words "Counties of Anson" and before the words "and Richmond."

The Attorney General for the State contended that, under the police power, the General Assembly had the right to make it a criminal offence to sell cotton in one of these counties named without complying with the regulations mentioned in the act.

The defendant insisted that the Legislature had not the power to pass the acts under which the indictment is drawn, because—

1. It is in violation of sections 1 and 31 of Article 1 of the Constitution, which is as follows: "Sec. 7. No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

Sec. 31. " Perpetuities and monopolies are contrary to the genius of a free State, and ought not to be allowed."

2. If the law is not in violation of the Constitution of the State, it is in conflict with and is prohibited by the Fourteenth Amendment to the Constitution of the United States.

*The Attorney General* and *Mr. W. H. Day*, for the State.
*Mr. R. B. Peebles*, for the defendant.

AVERY, J.—after stating the case: The police power of the State is the authority, vested in the Legislature by the Constitution, to enact all such wholesome and reasonable laws, not in conflict with the fundamental laws—the Constitution of the State and the United States, together with laws made in pursuance of it—as they may deem conducive to public good. *Carr* v. *Alger*, 7 Cush., 84. The question being whether the law-making branch of the State government has exceeded the limits of its power, as defined in that instrument, it is the duty of the Courts to resolve every doubt in favor of the validity of the law, and to presume that it was passed in good faith to remedy, by regulating the manner of selling cotton, some evil not reached or corrected by previous legislation. *Powell* v. *Com.*, 114 Penn. State Reports, 265.

We see nothing in the act that confers on any individual or class of persons peculiar privileges or immunities, or that imposes restrictions on any person or class of persons in the disposition of their property, or in making purchases from others. Every citizen of North Carolina, who may buy or sell cotton in the counties of Anson, Northampton or Richmond, is equally amenable to the penalties mentioned in the act, and liable to indictment if he fails to see that a written assignment, or bill of sale in the prescribed form, is executed, witnessed and delivered to the nearest Justice of the Peace.

The statute then comes within the definition of a public local law. Such laws, if they operate uniformly and subject all persons who come within the defined locality and violate their provisions to indictment in the same way, and to the same punishment, are not repugnant to the Constitution of North Carolina. *State* v. *Muse*, 4 D. & B., 319; *State* v. *Chambers*, 93 N. C., 600. But the objection that the prohibition is restricted to particular counties is met by a decision of our Court that is more directly in point. In *State* v. *Joyner*, 81 N. C., 534, this Court held a statute constitutional that made

it indictable for any person, except a manufacturer, to sell intoxicating liquors in the county of Northampton, and declared the manufacturer guilty of a misdemeanor if he sold less than a quart, because it did not discriminate in favor of or against any citizen in the State. In the case of *State* v. *Stovall*, 103 N. C., 416, a provision in the act incorporating an agricultural society, that it should be unlawful for any person to sell, or offer for sale, any liquors, tobacco, or other refreshments, within one-half mile of the ground of said society during the week of their annual fair, except persons doing regular business within the prohibited territory, was held consistent with both sections 7 and 31, Article 1 of the Constitution. In the case of *Intendent* v. *Sorrell*, 1 Jones, 49, an ordinance requiring oats to be weighed by the public weigh-master before being offered for sale in the city of Raleigh, and imposing a penalty for its violation, was held constitutional. It was decided by the Court to be a law to regulate trade, as distinguished from one in restraint of it, like the grant in a city charter of the authority to prescribe rules governing the sale of articles of food in the markets.

The Courts can take judicial notice of the fact that, owing to the nature of cotton as a growing crop, and the usual methods adopted in gathering and ginning, it is peculiarly exposed to theft until it is baled. It seems that section 1006 of *The Code* forbidding the sale of cotton in the seed, or lint cotton in quantities less than a bale, between the hours of sunset and sunrise, was intended to protect planters of cotton by withdrawing the temptation offered to dishonest men to take from their fields, storehouses and ginhouses a valuable product that is so difficult to identify and reclaim, and to sell it to dealers under the cover of darkness. It is the duty of the Courts to assume that the Legislature enacts laws with a view to the public benefit. We must presume that the provision of *The Code* referred to was, in

the opinion of the General Assembly, insufficient to afford adequate protection to the producers of this great staple in thóse counties mentioned in the law under which the bill of indictment was drawn, and therefore persons who disposed of small quantities of loose cotton, even in daylight, were required to execute a receipt that might prove valuable in tracing the movements of a thief. We can see how the law might have been enacted with a view to afford necessary protection to property, and when it proposes upon its face to mete out the same punishment for violation of its provisions to the seller and buyer, we cannot go behind the manifest meaning of the act, according to all legal rules of construction, and hunt for a hidden intent, under the guise of regulating trade, to restrict the rights of any class of persons to enjoy the fruits of their own labor. *Powell* v. *Com.*, 114 Penn. State Reports, 276; *Soon Hing* v. *Crowley*, 113 U. S., 703. A statute declaring *it unlawful within certain counties to transport or move after sunset and before sunrise any cotton in the seed* has been declared constitutional and valid as an exercise of the police power by the Appellate Court of Alabama. *Davis* v. *State*, 68 Ala., 58 (44 Am. R., 128).

Speaking of laws that apply only to particular localities, or particular classes, Judge COOLEY says: "If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application to the class or locality to which they apply and that they are public in their character, and of their propriety and policy the Legislature must judge." Cooley Const. Lim., marg. p. 390; *ibid*, star p. 596.

Though this Court was the first in the American Union to assert and exercise the salutary power to declare an act of the Legislature unconstitutional, it has since shown its conservative spirit by refusing to pass upon or question the power of a co-ordinate branch of the State government, equal in dignity and clothed with more extensive discre-

tionary power, except when the violation of the organic law was palpable.

The police power, under our Federal system of government, has been left with the States, and the only limit to its exercise in the enactment of laws by their Legislatures is, that they shall not prove repugnant to the provisions of the fundamental law—the State Constitution and the Federal Constitution, with the laws made under its delegated powers. Cooley's Const. Lim., star p. 574. The extent to which State laws have been sustained, when enacted under this reserved power, will appear by reference to a few leading cases: *Butchers' Union Co.* v. *Crescent City Co*, 111 U. S., 746; *Beer Co.* v. *Moss,* 97 U. S., 25; *Bertheolf* v. *Sully,* 74 N. Y., 509 (30 Am. R., 323); *Wood* v. *State,* 6 Ark., 36; *State* v. *Meigler,* 29 Kan., 252; *Phelps* v. *Roy,* 60 N. Y., 10; *City of New Orleans* v. *Stothard,* 27 La., 417; *Thorp* v. *R. & D. Railroad Co.,* 27 Vt., 140; Cooley's Const. Lim., marg. pp. 587, 595.

It remains to discuss the other position, that the statute under consideration is in conflict with the Fourteenth Amendment of the Constitution of the United States If we have shown, by the authorities cited and reasons adduced, that such local legislation does not come within the inhibition of the organic law of the State against a grant of "exclusive or separate emoluments or privileges," or the toleration of monopolies, when every citizen who comes within the sphere of its operation is alike amenable for a violation of its provisions, it would follow that it could not be declared void, because it abridges the privileges or immunities of any citizen, or class of citizens, of the United States. The Supreme Court of the United States has so held in a number of cases. *Missouri* v. *Lewis,* 101 U. S., 22; *Mugler* v. *Kansas,* 123 U. S., 663.

The States did not originally delegate to the government of the United States the power to protect the citizens of the

State, and the duty originally assumed by the States of guaranteeing equal rights to all, remains still equally as binding as an obligation and unimpaired as a right as when the Federal Constitution was adopted. The Fourteenth Amendment extends the right of citizenship in the State and nation to all persons born or naturalized in the United States and subject to the jurisdiction thereof, and assumes for the Federal Government the obligation to protect all such citizens against oppression under any law enacted by a State that abridges their privileges or immunities, deprives them of life, liberty or property without due process of law, or denies to them the equal protection of the law. *United States* v. *Cruikshank et al.,* 92 U. S., 542.

It has been held by the Supreme Court of the United States, that no legislation is open to the charge of depriving one of his rights without due process of law, if it be general in its operation upon the subject to which it relates, and is enforceable in the usual modes established in the administration of government, with respect to kindred matters—that is, by process or proceedings adapted to the nature of the case. *Dent* v. *West Virginia,* 129 U. S., 114, and cases cited. It will be admitted that the act under which the defendant is indicted, not only operates generally upon all persons and classes who violate its provisions, but by its terms, is enforceable against all, by a criminal prosecution conducted in the usual way, and therefore it is not repugnant to section 1 of the Fourteenth Amendment to the Constitution of the United States. In further corroboration of this view, we may quote the language used by the Court in *Mugler* v. *Kansas,* 123 U. S., 623: "But this Court has declared, upon full consideration in *Barbier* v. *Connolly,* 113 U. S., 27, the Fourteenth Amendment had no such effect." After observing, among other things, that the amendment forbade the arbitrary deprivation of life and liberty, and the arbitrary

104—46

spoliation of property, and secured equal protection to all under like circumstances, in respect as well to their personal and civil rights as to their acquisition and enjoyment of property, the Court said: "But neither the amendment— broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity."

Two of the authorities cited in support of the defendant's contention (Jacobs' case, 98 N. Y., and concurring opinion of Justice FIELD in *Bartemeyer* v. *Iowa*, 18 Wallace, 137) tend to establish the doctrine on the one hand that the Legislature cannot prohibit one from carrying on a lawful occupation under the guise, which is palpably false, of protecting the public health, because it is a law in restraint of trade, nor, on the other, prohibit the sale or use of property already in one's possession, because the denial of the right of enjoying it, or disposing of it, is depriving the owner of property without due process of law. Granting that the first of these positions is tenable, the principle is not at all analagous to that which governs our case. There can be no question about the right of the State to regulate the manner of selling any article produced or manufactured within its borders, in any portion of its territory, with the purpose apparent, from the terms of the law, of protecting the manufacturer or producer against fraud or dishonesty. Cooley's Const. Lim., star p. 587; Tudeman's Lim. on Police Powers, § 89.

It is a rule, founded on reason, and supported by authority (as we have already intimated), that we should hold the apparent purpose of the law to be the real objects aimed at

by a co-ordinate branch of the State government, whose duty it is to provide for the protection of its citizens.

Upon the same principle as that announced in Jacobs' case, the Court of Appeals of New York, in the case of *The People* v. *Marks*, 99 N. Y., 377, declared an act unconstitutional which prohibited the manufacture of what is commonly called oleomargerine, whether it was so made as to be wholesome food or not. On the other hand, the Supreme Court of Pennsylvania decided that a law containing a similar prohibition was clearly constitutional, and valid as an exercise of the police power. *Powell* v. *Commonwealth*, 114 Penn., 265.

But whatever may be the proper construction of the laws, similar in their provisions to those found in New York or Pennsylvania, or whether they shall be ultimately held by our Courts valid or invalid, the production of cotton is not forbidden, nor the mode of its culture prescribed, and the sale of it is not prohibited, but regulated, by the Act of 1887, as amended by the Act of 1889, and there is therefore no analogy between the cases.

There was error in the holding that the defendant was not guilty. Let this opinion be certified, to the end that a verdict of guilty be entered.

Error.