Spear, J.
The action is based upon provisions contained in the act of February 28, 1888 (85 Ohio Laws, 34), entitled “An act to regulate the construction of buildings within any city of the first class and first grade, and to provide for the appointment of an inspector of buildings.” By section 33 of the act it is provided that all buildings except such as are used for private residences exclusively, in a city of the first grade of the first class, of three or more stories in height, shall be provided with one or more suitable fire escapes, extending from the first story to the upper stories of such building, and above the roof and on the outer walls thereof, in such location and numbers and of such material and construction as the inspector (provided for in the statute) may determine.
It is further provided that after such determination by the inspector he may notify the owner, lessee, or occupant of such building, requiring him to cause such fire escape to be constructed within thirty days after the service of the notice, and if the person so notified fails to comply there *289 with, he shall be subject to a fine of not less than ten dollars or more than one hundred dollars, and to the further fine of fifty dollars for each week that he fails to comply with the same.
By section 61 of the act, it is provided that “any court having equity jurisdiction in term time, or in vacation, may, on the application of the inspect- or, by any suitable process or decree in equity suit, brought in the name of said city, enforce the provisions of this act; and may, on such application, issue an injunction to restrain the use or occupation of any building or structure in- said city, erected, altered maintained, or used in violation of this act.”
No question of fact material to the case is in dispute. • The contention is as to the constitutionality of the sections of the act referred to.
1. It is urged that the sections cited undertake to confer upon a court of equity, without the intervention of a jury, the power to take away from the owner by an order of injunction, the right to the use and enjoyment of real estate, and thereby deprive the party of his constitutional right of trial by jury, • and of his remedy by due course of law.
The proposition cannot be maintained. It is not the purpose or effect of the act to take property, nor to deprive the owner of the lawful use of property, but simply to require him to use it in a lawful manner. The owner is not prevented from selling it, mortgaging it, devising it, or giving it away; nor does the act impose any lien on property. The .statute simply operates upon it as it does upon all other like property coming within its terms. Our constitution, and the practice of the courts, have always recognized the fact that *290 in many cases no right of trial by jury exists. If the civil authorities were obliged to wait the slow process óf a jury trial in such matters the evil sought to be remedied would seldom be avoided. The power to be exercised by the inspector is administrative rather than judicial in its character. A jury has not been the ordinary tribunal to determine the exercise of such power. Hence, no right of trial by jury is violated in. the present case. Inwood v. The State, 42 Ohio St., 186; Met. Board of Health v. Heister, 37 N. Y., 661.
The enactment is but the exercise of the police power of the state, that power which is characterized by Mr. Justice Gray, in Leisy v. Hardin, 135 U. S., 127, as “that inherent and necessary power, essential to the very existence of civil ■ society, and the safeguard of the inhabitants of the state against disorder, disease, poverty and crime,” and necessarily extends “to the protection, health, comfort and quiet of all persons and all property within the state.” It no more denies to the owner the use of his property than do' those acts known as building laws, which forbid the erection of frame structures within prescribed limits, or define the thickness, and strength of walls, bearers, girders, etc., or direct the demolition of strúetures falling to decay, or otherwise endangering the lives of passers-by, which acts so far as they are reasonable in their character, ahd adapted to accomplish the purpose for which they are designed, are uniformly held to be within the constitutional authority of the .general assembly in its just exercise of the police power of the state. Ex parte White, 67 Cal., 102; St. Paul v. Dow, 37 Minn., 20; Hennessy v. St. Paul, 37 Fed. Rep., 565; Hubbard v. Paterson, 45 N. J. (L.), 310; People v. *291 D' Oench, 111 N. Y., 359; Phila. v. Coulston, 13 Phila., 182; Fire Dep. v. Wendell, 13 Daly, 427; P. & W.’s Public Health and Safety, sections 326, 341; Fire Dep. v. Chapman, 10 Daly, 377; Grant v. Slater Mill & Power Co., 14 R. I., 380; Lawton v. Steele, 152 U. S., 133.
Nor is the act open to the criticism that it violates that provision of section 1, of article 4, of the constitution of the United States, which declares * * * “nor shall any state deprive any person of life,, liberty, or property without due process of law,” for the settled doctrine is that this section does not abridge the exercise of the police power of the states, nor limit the subjects upon which they may legislate.. The State v. Moore, 104 N. C., 714; Woodruff v. Railroad Co., 59 Conn., 63; In re Rahrer, 140 U. S., 545; P. & W. Public Health and Safety, section 15, and authorities cited; Lawton v. Steele, supra.
But were it otherwise, still the criticism could not avail, for it is due process of law if it be “law in its regular course of administration through courts of justice; law which proceeds upon due notice and inquiry, which hears before it condemns, and renders judgment only after trial.” All these requirements are amply provided for in the sections of the act which have been recited.
It will be noticed, also, that the action at bar is not for the recovery of a fine, or the enforcement of any penal sanction, but that its object is simply to prevent the use of the building complained of until the owner shall comply with the requirements as to fire escapes. The action does not seek to punish for past violations of the law; its purpose is only to stay the arm of the wrong-doer.
Hence, no question is here raised as to the much- *292 debated doctrine that the general assembly has no power to authorize enforcement of a criminal law by a civil action, and that a court of equity cannot hold cognizance of any criminal matter. A building of the character described not provided with suitable exits, is, speaking in a general sense, a nuisance, and the power of the general assembly to authorize injunction, at the action of the proper authorities, to present the continuance of that which is detrimental to the public safety, is too well established in this state to need vindication.
2. Another, and a more serious question arises upon the second objection to this statute. The objection is that it violates section 26, article 2, of the constitution, which provides that “all laws of a general nature shall have a uniform operation throughout the state.” That this clause is mandatory in character, and not directory only, has been held in a number of cases by this court, .and is so well settled as to make further discussion unnecessary. Therefore, if the sections here in review violate section 26, they cannot be maintained.
"We approach the consideration of the constitutional question with a full appreciation of the rule that every presumption must be taken in favor of the validity of the. statutes, and that no court should declare a statute unconstitutional unless its invalidity is clear. It is frequently extremely difficult to determine the exact line where validity ceases, and invalidity intervenes, as will appear by reference to a few of the many cases on the subject.
It has been held (State v. Shearer, 46 Ohio St., 275), that a law is not necessarily of a general nature merely because it is upon a general subject, or because the same result might have been *293 reached by a general law, and that special legislation upon a subject-matter in its nature local is not prohibited by section 26 of article 2, and that the subject of dividing territory into school districts being in its nature local, the formation of a special school district by special act was valid.
So, too; it has been held (McGill v. The State, 34 Ohio St., 228), that although the trial by jury was a general subject in which the people of the state at large were equally interested, yet the mode of selection of juries was left to legislative discretion and judgment, and it was within legislative competency, where it was apparent that a mode differing from that generally in use is necessary to meet the special wants of a particular county, to enact a law applicable to that county.
In Marmet v. The State, 45 Ohio St., 63, it was held that an act which provided that in cities of the first grade of the first class, proprietors of theaters, of livery stables, etc., and owners of vehicles used upon the streets of the city, should pay a license as provided, and any one violating the provisions should be fined, was not unconstitutional, inasmuch as the general assembly has •the power to regulate occupations (other than the selling of liquor) by license, where a special benefit is conferred by the public upon those who follow them, or where the occupation is injurious to or dangerous to the public. The principal question in dispute was the claim to impose a license, but incidentally it was urged that the act was a special one conferring corporate power, thereby violating section 1, of article 13, of the constitution, and that it violated section 26, of article 2. It was considered that a special need for such legislation appeared to exist in the 'locality named, *294 and, the act, as to that feature, was sustained upon the principle which is made the basis of the holding in the McGill case. The act was regarded as special and local as to the ends to be accomplished, while it conformed in letter to the legislative rule of classification, and even though it did confer corporate power, was not regarded as open to greater or other objection on that score than many acts which have been sustained by the courts since the adoption of the present constitution. No claim is made that the fire escape act attempts to confer corporate power.
On the other hand, a late deliverance of the court giving construction to section 26, article 2, is the case of Commissioners v. Rosche, 50 Ohio St., 103, involving the validity of an act to provide for refunding taxes erroneously paid in counties containing a city of the first grade of the first class, and it is there held that the subject of the act being in no respect local, but of general interest to all the inhabitants of the state, the act was in conflict with section 26, of article 2, and therefore invalid.
In The State v. Bargus, 53 Ohio St., 94, .it is held that “laws providing for the public support of the poor are of a general nature,” and that “an act by which the general assembly attempts to exempt counties from the operation of general laws on ac-j count of trivial differences in population is not of 1 uniform operation throughout the state.” See also, Falk. Exp., 42 Ohio St., 638, and The State v. Ellet, 47 Ohio St., 90.
It is observed by Boynton, J., in McGill v. The State, supra: “The difficulty encountered in all cases where a legislative act is alleged to contravene the provision requiring the uniform opera *295 tion of law of a general nature, lies in determining what constitutes a law of that nature, within the meaning of the constitution. The test is said to depend upon the character of its subject-matter; that if that is of a general, as distinguished from a local or special nature, existing in every county throughout the state, a subject in which all the citizens have a common interest, then the law is one of a general nature, -requiring a uniform operation throughout the state.”
“Existing in every county throughout the state” means, we suppose, only in every county where the conditions of the statute exist, for in order to be general and uniform in operation it is not necessary that the law should operate upon every person in the state, nor in every locality; it is sufficient, the authorities coincide in holding, if it operates upon every person brought within the relation and circumstances provided for, and in every locality where the conditions exist. But, upon the other hand, it seems equally well settled, a law is not of uniform operation if it exempts a portion of those coming within its terms; that is, if it confers privileges, or imposes burdens, upon some of a class answering the description which are not conferred or imposed upon all others belonging to the same category. And it would seem to follow from this that the constitutional requirement of uniform operation throughout the state is not answered by showing that the law is of uniform operation within one city of the state only, however populous, and even though described as a city of the first grade of the first class, if it appears that the act does not confer power, corporate or administrative, and that the *296 conditions undertaken to be legislated upon are common to other sections of the state generally.
While the subjects to be acted upon by the statute under consideration are persons and buildings, the object of the statute is the protection of persons from the dangers of fire. This is implied in its title as well as subject-matter, and is perhaps made clearer by the title of the amendment of April 18, 1892, which is entitled “An act to provide for the better protection of human life against fire,” etc., etc. Protection of life and limb, it would seem, is not a local matter, but is a matter of general public interest, in which every person in the state coming within the category of people exposed to the dangers intended to be guarded against, is equally interested with every other such person, and it would appear to be as much the duty of owners of buildings answering to the description as to construction and occupancy of those named in the statute to observe the humane directions of this act whether located in one part of the state or in another, for buildings (other than private dwellings) of three or more stories in height are found in every locality throughout the state. Doubtless more frequent instances of dangers of the nature referred to may occur in thickly populated cities than in the smaller municipalities or the rural districts, but how can it be said that there is any appreciable difference between the hazards incident to the occupancy of such a building in a city- of the first class and those to be encountered in other portions of the state wherever they are found ?
If any reasons of a local character exist which require this legislation for Cincinnati which do not apply with equal force to other portions of the *297 state, none appear on the surface, and certainly none have been suggested.
Being a law of a general nature, not adapted alone to cities of the first class (Cincinnati), and lacking the requirement of uniform operation, we are of opinion that the sections cited are in clear conflict with section 26, article 2, of the constitution; and realizing as every observer must, the growing tendency to render this limitation on legislative power directory merely, and to treat it as if it were devoid even of moral obligation, by resorting to local legislation upon matters which, if of importance, concern the people of all parts of the state, we are impelled by duty, whenever such acts are brought before us for review and their invalidity appears clear, to so declare. Upon this ground the judgment of the circuit court dismissing the case should be affirmed.
It is not intended by this holding to overturn earlier decisions of the court upon kindred questions. Each case stands, and must stand, upon its peculiar facts and circumstances. The matter of discrimination between cases is often one of nicety. Legal definitions, in the nature of things, cannot be so comprehensive and exact as to embrace necessarily all possible cases arising which may involve the general subject, and hence, in considering the language of the reports, and especially of opinions, the precise ease before the court must be apprehended in order to an understanding of the rule of law determined.

Judgment affirmed.

Minhsall, J,, dissents as to the last proposition.