### STATE v. HERBERT DEW.

(Filed 9 April, 1958)

**1. Disorderly Conduct § 1:   Public Drunkenness § 1—**

There is no general law in this State making public drunkenness a crime. That part of G.S. 18-51 relating to public drunkenness pertains, under the doctrine of *ejusdem generis*, to public drunkenness at athletic contests and other similar places; G.S. 14-334 relates to conduct which is both drunken and disorderly; G.S. 14-275 relates to disturbing religious congregations; and G.S. 14-335 is, in effect, seventeen different local statutes, each pertaining to a relatively small group of counties.

**2. Statutes § 7—**

A statute proscribing public drunkenness, followed by seventeen sub-

sections, each of which prescribes a different punishment for the county or counties named in the subsection, is not a general law, but is, in effect, a series of local acts combined into one statute for convenience. The legislative intent that the statute should be regarded as a local one is indicated by the history of the statute and the classification made by the Legislature itself.

**3. Constitutional Law §§ 11, 19:   Public Drunkenness § 1—**

The General Assembly, in the exercise of its police power, may enact local statutes making proscribed acts, such as public drunkenness, criminal offenses in the localities stipulated, provided the local statutes apply alike to all persons within each locality specified. The distinction is noted between local statutes in derogation of the general law applicable to the entire State and exemptions of particular localities from the general law.

APPEAL by State of North Carolina from *Bundy, J.,* at October 1957 Term, of EDGECOMBE.

Criminal prosecution upon warrant charging defendant with being in intoxicated condition in a public place in town of Tarboro—the third or more times within a period of twelve months, contrary to the statutes in such cases made and provided, etc., heard in Superior Court on appeal thereto from judgment of Recorder's Court for Edgecombe County.

At January Term 1957 the jury returned verdict of Guilty. Defendant made motion to set aside the verdict, upon the ground that the punishment provided in G.S. 14-335, subsection 12, applied only to Craven, Edgecombe and Lenoir Counties, and is in contravention of the general law and the Constitution under the decision in *S. v. Fowler,* 193 N.C. 290, and under Article 1, section 7, of the Constitution.

The cause being continued from term to term came on for hearing at October 1957 Term of Superior Court, upon motion above set forth and in arrest of judgment upon the ground stated; and the judge presiding being of opinion that General Statute 14-335 is unconstitutional and void in contravention of Article 1, section 7, of the Constitution of North Carolina, and that defendant's motion is well taken, entered order that the judgment be arrested and defendant discharged.

The Solicitor for the State excepts to the foregoing judgment, and appeals to Supreme Court and assigns error.

*Attorney General Patton, Assistant Attorney General T. W. Bruton for the State*

*Weeks & Muse for defendant, appellee.*

WINBORNE, C. J.:   The question involved on this appeal, as stated by the Attorney General for the State of North Carolina, is this: "Is

G.S. 14-335 (12) unconstitutional and in contravention of Article 1, Section 7, of the North Carolina Constitution, and in contravention of the General Law of the State with respect to the punishment for public drunkenness?" A review of decided cases leads to a negative answer.

In this connection the ruling of the trial court appears to have been based upon decision in the case of *S. v. Fowler,* 193 N.C. 290, 136 S.E. 709, wherein it was held that a five-county statute pertaining to illegal possession of whiskey was void for that it was contrary to the general law throughout the State in that respect. But the Attorney General takes the position, and we hold rightly so, that there is no general law making public drunkenness a crime. It therefore follows that the ruling in *S. v. Fowler, supra,* is inapplicable here.

Apparently there are four statutes in respect to public drunkenness.

The First, G.S. 14-335- the one under which the case in hand originated, provides, in pertinent part, as follows: "Local: Public Drunkenness. If any person shall be found drunk or intoxicated on the public highway, or at any public place or meeting, in any county, township, city, town, village or other place herein named, he shall be guilty of a misdemeanor, and upon conviction shall be punished as is provided in this Section * * *.

"12. In Carteret, Craven, Edgecombe, Johnston, Lenoir and Lincoln Counties, by a fine for the first offense, of not more than fifty dollars ($50.00), or imprisonment for not more than thirty days; for the second offense within a period of twelve months, by a fine of not more than one hundred dollars ($100.00), or imprisonment for not more than sixty days; and for the third offense within any twelve months' period such offense is declared a misdemeanor, punishable as a misdemeanor within the discretion of the court."

The Second, G.S. 18-51, is captioned: "Drinking or offering drinks on premises of stores and public roads or streets; Drunkenness, etc., at athletic contests or other public places." As to this, it is unnecessary to quote the text, for, as the Attorney General points out, under the doctrine of *ejusdem generis,* the latter part of the statute would apply to any place similar to an athletic contest,—hence there is a difference between the two statutes.

The Third, G.S. 14-334, relates to public drunkenness and disorderliness—making it unlawful for "any person to be drunk and disorderly in any public place * * *." To be guilty, the person must be both drunk and disorderly. See *S. v. Myrick,* 203 N.C. 8, 164 S.E. 328. Hence this statute differs from the statute violation of which defendant stands charged.

The Fourth, G.S. 14-275, relates to disturbing religious congregations. For the reasons given there seems to be no general law in North

Carolina, other than G.S. 14-335, relating to drunkenness "on the public highway, or at any public place or meeting * * * ."

But defendant contends that G.S. 14-335 is itself a general law, and that sub-section 12 thereunder is void as being in conflict with the other sections of the statute. He bases his contention on the fact that 78 counties are included within the statute and by weight of numbers it becomes a general law. This does not follow, for there are seventeen different sub-sections of the statute, each of which prescribes a different punishment, and each includes one or more counties. Thus there is no uniformity among the several counties. This in effect divides the one statute into seventeen different statutes each pertaining to a relatively small group.

A brief history of G.S. 14-335 discloses the following: The first enactment was in 1897, Public Laws Chapter 57, which provided that the punishment be a fine of not less than ten dollars or imprisonment not exceeding thirty days. This enactment applied only to Buncombe, Transylvania, and Henderson Counties; in 1899, Public Laws Chapters 87, 208, and 638, the counties of Graham, Madison, and Dare were added and the punishment was reduced to five dollars or not more than twenty days; also in 1899, Public Laws 608, a punishment of not more than fifty dollars or not more than thirty days was enacted to apply to Rutherford, Gaston, Mecklenburg, Haywood, and Cleveland Counties; Public Laws 1901, Chapter 447, added Poplar Branch Township, Currituck County, and provided a fine of not less than ten nor more than fifty dollars, or imprisonment not to exceed thirty days; Public Laws 1903, Chapter 116, added Fruitville Township to Poplar Branch Township; Public Laws, 1903, Chapter 758, inserted Pungo, in Pantego Township, Beaufort County and provided for a fine of not less than five dollars nor more than fifty, or imprisonment not less than fifteen days; Public Laws 1903, Chapters 124 and 523, added Macon and Stanley Counties and provided for fine not to exceed fifty dollars or not more than thirty days.

These laws were codified in the Revisal of 1905 under Section 3733: "Public Drunkenness. If any person shall be found drunk or intoxicated on the public highway, or at any public place, or meeting in the counties of Dare, Graham, Buncombe, Henderson, Jackson, Wake, Warren, Ashe, Stanly, Madison, Gaston, Cleveland, Haywood, Macon, Catawba, Lincoln, Mecklenburg, or Rutherford, or in Poplar Branch and Fruitville Townships, Currituck County, or at Pungo in Beaufort County, or shall become drunk and engage in boisterous and disorderly conduct on any public highway in either Moore, Richmond or Scotland counties, he shall be guilty of a misdemeanor and be fined not exceeding fifty dollars, or imprisoned not exceeding thirty days."

Thereafter various amendments were added until the codification of

the Consolidated Statutes of 1919 wherein the statute was broken down into sections similar to the present G.S. 14-335. And thereafter more amendments were added and have been codified in the present revised volume of the General Statutes, including the Supplement. From the time of the 1919 codification of the Consolidated Statutes the Legislature has called the present G.S. 14-335 a local statute. This is strong indication of the legislative intent that this is to be a local statute rather than general. The history of the statute indicates that the Legislature intended to enact piecemeal local legislation and that these were combined into one large statute merely for convenience since they were related in subject matter.

Having resolved the question of there being no general law in conflict with G.S. 14-335, the question now arises whether the Legislature has the right to enact local legislation on public drunkenness under its police powers. There is a line of cases in North Carolina squarely in point, all of which hold that as long as the local statutes apply alike to all persons within that locality, it is a valid exercise of the police powers.

A representative case is *S. v. Moore,* 104 N.C. 714, 10 S.E. 143. It is there stated: "The police power of the State is the authority, vested in the Legislature by the Constitution, to enact all such wholesome and reasonable laws, not in conflict with the fundamental laws—the Constitution of the State and of the United States, together with laws made in pursuance of it—as they may deem conducive to public good * * * 7 Cush. 84. The question being whether the law-making branch of the State government has exceeded the limits of its power, as defined in that instrument, it is the duty of the courts to resolve every doubt in favor of the validity of the law, and to presume that it was passed in good faith to remedy * * * some evil not reached or corrected by previous legislation * * *.

"The statute then comes within the definition of a public local law. Such laws, if they operate uniformly and subject all persons who come within the defined locality and violate their provisions to indictment in the same way and to the same punishment are not repugnant to the Constitution of North Carolina. *S. v. Muse,* 20 N.C. 463; *S. v. Chambers,* 93 N.C. 600. But the objection that the prohibition is restricted to particular counties is met by a decision of our Court that is more directly in point. In *S. v. Joyner,* 81 N.C. 534, this Court held a statute constitutional that made it indictable for any person, except a manufacturer, to sell intoxicating liquors in the county of Northampton, and declared the manufacturer guilty of a misdemeanor if he sold less than a quart, because it did not discriminate in favor of or against any citizen in the State. In *S. v. Stovall,* 103 N.C. 416, a provision in the act incorporating an agricultural society, that it should be unlawful for

any person to sell, or offer for sale, any liquors, tobacco or other re-
freshments within one-half mile of the ground of said society during
the week of their annual fair, except persons doing regular business
within the prohibited territory, was held consistent with both Secs. 7
and 31, Art. 1 of the Constitution."

Other cases to the same effect are: *S. v. Joyner*, 81 N.C. 534; *S. v.
Stovall, supra; S. v. Barringer*, 110 N.C. 525, 14 S.E. 781; *S. v. Barrett*,
138 N.C. 630, 50 S.E. 506.

Therefore, under the authority of these cases the statute, G.S. 14-335
(12), is valid because it pertains to all alike in the six counties men-
tioned. But defendant contends these cases have been modified or
abandoned in later cases, naming, among others, *S. v. Fowler, supra;
S. v. Felton*, 239 N.C. 575, 80 S.E. 2d 625; *Taylor v. Racing Asso.*,
241 N.C. 80, 84 S.E. 2d 390.

However, these cases sustain the earlier cases rather than overrule
them. For example in the *Fowler* case, *supra*, the Court specifically
said that under the police power there can be classification so long as
it is not arbitrary, but that it is not a question of valid classification
when the purported exercise of the police power on a local level is in
derogation of the general law which was designed to act throughout
the State. In making the distinction between the police powers and
the privileges and immunities clause of the State Constitution (Art. 1,
Sec. 7), the Court said: "The principle" (of no separate emoluments or
privileges) "it should be understood, was not designed to interfere
and does not interfere with the police power of the State, the object of
which is to promote the health, peace, morals, and good order of the
people, to increase the industries, to develop its resources, and to add
to its wealth and prosperity * * * Legislation of this character is a
necessity; but in the exercise of the police power classification must be
natural, not arbitrary; it 'must always rest upon some difference which
bears a reasonable and just relation to the act in respect to which the
classification is proposed, and can never be made arbitrarily and with-
out any such basis'. * * * *."

Also, in *Taylor v. Racing Association, supra*, an action to abate the
public nuisance of dog-racing which had been given legislative sanc-
tion by a special act pertaining to Morehead City, one of the parties
contended that the *Barrett, Barringer, Stovall* and *Joyner* cases, *supra*,
sustained the proposition that the Legislature could enact such local
legislation. There *Bobbitt, J.*, speaking for the Court, discussed these
cases and concluded that they were not controlling in a situation where
there was a general law governing the subject matter of the special act,
saying: "It is immediately apparent that the *Joyner, Stovall, Moore,
Barringer*, and *Barrett* cases concerned statutes imposing prohibitions,
restrictions and burdens in certain localities, *not in conflict* with any

general criminal statute dealing with the same subject matter. They do not in any sense grant the residents or any person, firm, association or corporation in such locality any *exemption or privilege* not enjoyed throughout the State. Where so understood, there is no conflict between these decisions and the decision in the *Fowler* case * * *."

In conclusion this Court holds that, since there is no general law in conflict with G.S. 14-335, relating to public drunkenness on a public highway or meeting place, the statute G.S. 14-335 (12) is not objectionable as being in violation of Article 1, Section 7, of the Constitution of North Carolina. It does not confer any special emoluments or privileges otherwise covered by general law. Therefore, the General Assembly may enact local legislation on public drunkenness under its police power so long as there is no arbitrary or unreasonable classification.

For reasons stated the judgment from which appeal is taken is

Reversed.