## W. O. THOMPSON v. TOWN OF LUMBERTON.

(Filed 26 October, 1921.)

1. **Equity—Injunction—Criminal Law— Municipal Corporations— Cities and Towns—Ordinances.**

    The enforcement of the criminal law, whether by statute or valid ordinance, made punishable as a misdemeanor under general statute, cannot be interfered with by the equitable remedy by injunction.

2. **Same—Damages.**

    Where the violation of a town ordinance is made a misdemeanor, its validity may be tested by the one who is tried for violating it as a matter of defense, and he cannot invoke the equity jurisdiction of the court by injunction on the ground that his remedy is inadequate because an incorporated city or town cannot be made liable in damages in such matters.

**3. Same—Statutes—Automobiles.**

An ordinance providing for the examination of the character and ability of one applying for the license for running an automobile upon the streets of the city, and the issuance of a license if proven or adjudged satisfactory by the municipal authorities, upon the payment of an annual license fee of $5, comes within the valid legislative powers conferred on municipal corporations by general statute in regard to their well government, for the protection of the citizens from danger of collisions, and for the morals of the community, Laws 1907, ch. 343, secs. 45 and 46, and is further sustained by the express provisions of the act of 1919, relating to the subject.

**4. Same—Licenses—Automobiles.**

An ordinance of a municipality regulating the issuance of licenses to permit the running of automobiles upon their streets is not invalid because they require a license fee, but is enforceable for the protection of the pedestrians and others from collisions, and for the better morals of the citizens, and being in part a police regulation, an injunction will not lie.

APPEAL by defendant from *Kerr, J.,* July Term, 1921, of ROBESON.

The commissioners of the town of Lumberton adopted the following ordinance:

"SECTION 1. No person or persons residing within the corporate limits of the town of Lumberton shall be allowed to operate a motor vehicle within said town until he shall have been granted license as a chauffeur or driver, as provided by this ordinance.

"SEC. 2. Every person desiring to operate a motor vehicle within the town of Lumberton shall file written application with the town clerk and treasurer, accompanied by a certificate signed by two reputable, disinterested citizens, certifying that said applicant is of good moral character, and that in their opinion has sufficient knowledge of motor vehicles and sufficient experience and training as a chauffeur or driver to enable said applicant to safely operate the same; and that applicant is at least sixteen years of age. If said certificate is sufficient to satisfy said town clerk and treasurer that the applicant is qualified he shall, upon payment of the fees as hereinafter provided, issue a license, authorizing the applicant to operate motor vehicles within said town of Lumberton. If the certificate, or other accompanying evidence does not satisfy said town clerk or treasurer that said applicant is qualified and entitled to a chauffeur's or driver's license, he may decline to grant the same, and it shall be his duty in such cases to file the said application and present it at the next meeting of the board of commissioners of said town, at which time the said board may either grant or refuse said license, as they may deem proper; provided that until the meeting of the town board applicant shall be allowed to operate his motor vehicle in the same manner as if said license had been granted.

"Sec. 3. A fee of $5 shall be paid by each applicant to cover the costs and fees of investigating the qualifications of the applicant for driver's or chauffeur's license and the expense of granting the same. The said license shall expire on 30 June, 1922, but the same may be renewed from year to year by complying with the provisions of this ordinance. If as much as half of the fiscal year had expired at the time of application for license, then only one-half of the foregoing license fees shall be charged.

"Sec. 4. That every person violating the provisions of this ordinance shall be guilty of a misdemeanor and shall be fined the sum of $25 for each and every offense.

"Sec. 5. That this ordinance shall become effective on 30 June, 1921."

At the instance of the plaintiffs, taxpayers, a temporary injunction was issued by *Kerr, J.,* who at July Term, 1921, continued the restraining order to the hearing, and the defendant appealed.

*McIntyre, Lawrence & Proctor for plaintiffs.*
*Johnson & Johnson for defendant.*

CLARK, C. J. An injunction does not lie to restrain the enforcement of an alleged invalid town ordinance. It has been uniformly held that equitable relief will not be granted in cases where there is an adequate and effectual remedy at law. *Busbee v. Macy,* 85 N. C., 329. It has also been uniformly held that an injunction will not be granted to restrain the enforcement of the criminal law except when it is necessary to prevent irrevocable injury to, or destruction of, property or to protect the defendant from oppressive and vexatious litigation. In the latter case, the courts will grant an injunction only after the controverted right has been determined in favor of the defendant in a previous action.

Every violation of a town ordinance is by statute a misdemeanor, and if the courts should issue an injunction against the enforcement of an ordinance it would be an interference with the administration of the criminal law. When the defendant is put on trial for violation of the ordinance he has full opportunity to test its validity. This has been often presented to the Court, and the decisions are so clear and uniform as to leave the matter no longer debatable.

In *Cohen v. Goldsboro,* 77 N. C., 2, that town had adopted an ordinance forbidding the sale of fresh meat, except under restrictions prescribed in the ordinance. The defendants were arrested and fined for its violation, and as a result were forced to suspend their business. They sought to restrain the enforcement of the ordinance, and *Reade, J.,* said: "If the defendants have an unlawful ordinance, and have arrested

and fined the plaintiffs, as they allege, the plaintiffs have complete redress in an action for damages. And, as often as the arrest may be repeated, they have the like redress; but we are aware of no principle or precedent for interposition of a court of equity in such cases. The injunction is dissolved, and the case remanded." To this we might add that the defendant could set up the defense of the invalidity of the ordinance when arrested and put on trial, and has the right of appeal should the matter be decided against him.

In *Wardens v. Washington,* 109 N. C., 21, an injunction was sought against the enforcement of an ordinance prohibiting the burial of the dead within the corporate limits of that town, except upon a permit from the town clerk, which could be given only upon a prescribed certificate from the attendant physician, and violation of the ordinance was made punishable by a fine of $50. The Court refused to pass upon the validity of the ordinance, or restrain its enforcement, saying: "It is unnecessary, however, to pass upon the question as to the power of the Legislature to authorize or to validate the ordinance in the exercise of the police power inherent in the State, for we have an express authority, if one were needed, that an injunction does not lie to prevent the enforcement of an alleged unlawful town ordinance," adding that the plaintiff had his remedy by an action for damages, and saying further, "if the plaintiffs, or any one else, should violate the ordinance, upon a criminal prosecution for such violation the validity of the ordinance and of the act of the Legislature authorizing and validating it would come directly and properly before the Court."

The same question was again presented in *Scott v. Smith,* 121 N. C., 94, where the ordinance sought to be enjoined made it unlawful to play baseball in town without the mayor's permission. The Court said: "If the ordinance is lawful and valid, as insisted by the defendants, the plaintiff has no cause of complaint, and can maintain no form of civil action. If it is void, as insisted by the plaintiff, then he has misconceived his remedy, for a court of equity will not interpose when the plaintiff has a remedy at law by civil action for damages, and in a criminal action also the validity of the ordinance would be presented."

In *Vickers v. Durham,* 132 N. C., 880, the ordinance was attacked upon the ground that the statute under which the city proposed to condemn the plaintiff's land was unconstitutional. The court refused to sustain the injunction for the reason that the plaintiff had his remedy at law.

In *Paul v. Washington,* 134 N. C., 369, the plaintiff undertook to distinguish his case from the principles above cited upon the ground that he had no adequate remedy at law because of the well settled doctrine that municipal corporations are not liable for torts committed

by their officers when undertaking to enforce unconstitutional and void ordinances enacted in the attempted exercise of the police power; and also because the policeman who arrested the plaintiff was insolvent and contended that since neither the town nor its policemen could be held responsible in damages, the plaintiff had no remedy except by injunction. On this the Court ruled that the law had been correctly laid down in the above cases, and that an injunction was not the remedy to test the validity of a municipal ordinance.

In S. v. R. R., 145 N. C., 521, in which the whole matter was fully considered, the Court held that it is well settled, both in England and in America that a court of equity has no jurisdiction to interfere with by injunction or to restrain a criminal prosecution, whether the prosecution be for the violation of a statute, or for an infraction of a municipal ordinance, and that this rule applies whether the prosecution is by indictment or by summary process and whether it has been merely threatened or has already been commenced.

The plaintiff contends, however, that the intention of the board of commissioners in enacting said ordinance was to levy a tax not to provide a police regulation, but the intention can be ascertained only from the face of the ordinance itself. It has been uniformly held, without a dissent, that evidence cannot be received to explain or qualify an act of the General Assembly, and even a member of that body will not be permitted to aid the Court by testifying as to the purpose of the governing body in enacting the statute. This would seem to apply equally to the passage of an ordinance by the lawmaking body of a town.

The court found as a fact that this ordinance was enacted both for the purpose of regulating automobiles and to lay a license tax upon those not used for hire, and the plaintiffs contend, therefore, that an injunction will lie against the levy of the tax. But if this finding of fact were adopted by us, still the ordinance being in part a police regulation, the injunction would not lie.

In view of the vast number of automobiles and the great danger from lack of adequate supervision in cities and towns, both from the danger of collisions and to pedestrians, and to the morals of the community there is hardly any subject which more imperatively demands the exercise of the police power. Last year in this country there were 92,000 injuries and deaths sustained in the operation of automobiles. This is an aggregate of casualties in a year nearly double that sustained by this country during the entire duration of the World War.

The ordinance in this case is not in conflict with any statute, and is authorized under the general provisions of the defendant's charter, and is reasonable. The charter of defendant's town as reënacted and amended by ch. 343, Laws 1907, contains secs. 45 and 46 as follows:

"Sec. 45. The mayor and board of commissioners shall have power to enact such rules, regulations, ordinances and by-laws as they may deem necessary to secure the peace and good government of said town, and to enforce the same by imprisonment, fine or penalty, and the ordinances enacted by the said board, with the pains and penalties pertaining thereto, may be enforced within the corporate limits of the said town, and for one mile beyond and around said corporate limits.

"Sec. 46. Said mayor and board of commissioners, in addition to the powers which they possess by law, and which are conferred upon them by this charter, shall particularly have power to enact ordinances and to enforce same by imprisonment, fine or penalty as follows: 'To prevent vice and immorality, to preserve public peace and good order, to prevent and quell riots, disturbances and disorderly conduct.' "

Without elaborating the instances in which the uncontrolled and unrestrained operation of automobiles would violate the public peace and good order and might tend to promote vice and immorality and increase disorderly conduct, it is clear that the defendant is authorized by its charter to pass this ordinance.

The plaintiff was doubtless relying upon the decision in *S. v. Fink,* 179 N. C., 714, which held that under the Revenue Act of 1919 the provision prohibiting cities and towns from charging any license fee for driving or operating automobiles greater than $1, such tax was void. That decision was correct, and compelled by the language of the Revenue Act of 1919, but the General Assembly in 1921 added the following provisos to the section construed in *S. v. Fink:* "Provided nothing herein shall prevent the governing authorities of any city from regulating licenses controlling of chauffeurs and drivers of any car or vehicle and *charging a reasonable fee."* And provided further, that any city or town may charge a license not to exceed $50 for any motor vehicle used in transporting persons or property for hire in lieu of all other charges, fees and licenses now charged."

The effect of this amendment was to authorize the city to regulate and control the conduct of chauffeurs of automobiles and the drivers of all other vehicles and to impose a reasonable license fee, which we deem was not exceeded by the requirements of the payment of a license tax of $5. Even if this ordinance were enacted solely as a revenue measure, $5 is not an unreasonable amount to be levied as a tax and license fee on pleasure or other motor vehicles when $50 is authorized as a tax upon those motors engaged in transportation for hire.

Inasmuch as an injunction does not lie to test the validity of a town ordinance, we not only reverse the judgment, but must dismiss the action.

Action dismissed.