STATE v. F. E. DENSON AND J. W. SMITH.

(Filed 18 February, 1925.)

1. **Taxation—Automobiles—Chauffeurs—Municipal Corporations—Cities and Towns—Ordinances—Constitutional Law.**

Where an ordinance of a town expressly includes nonresidents thereof who conduct a business, practice a profession, or who are employed therein, requiring them to obtain a chauffeur's license for driving their automobiles, it includes within its terms such persons as are employed within the town and live beyond its limits and drive to and from their work, and the tax being imposed upon all of that class alike is not discriminatory, and the ordinance is constitutional.

2. **Same—Statutes.**

The second proviso of chapter 2, section 29, Public Laws 1921, refers to the privilege of operating a motor vehicle, and the third for regulating, licensing and controlling chauffeurs and drivers; and *held*, the words "any such car" in the third proviso does not restrict the drivers' license to the cars on which the privilege tax is laid; and an ordinance imposing a chauffeur's tax upon those driving cars within the corporate limits of the town is authorized by the statute.

APPEAL by defendants from *Sinclair, J.,* at January Term, 1925, of EDGECOMBE.

The defendants were severally charged with the breach of an ordinance of the city of Rocky Mount providing that it shall be unlawful for any person to drive a motor vehicle upon any street within the corporate limits of the city until said person shall have first obtained a driver's license therefor, and that the word "person" shall include not only every resident, but every nonresident who conducts a business, practices a profession, or is employed in the city, or who shall remain therein for a period of thirty days. The ordinance prescribes the method of applying for the license and the conditions upon which it is to be granted.

A special verdict was returned, which includes this finding: "The defendants are, and were, on or about 12 September, 1924, residents of Nash County, and were employed at the Atlantic Coast Line Railroad shops, which place of employment is within the corporate limits of the city of Rocky Mount, but the defendants' homes were about four miles outside of the corporate limits of the city of Rocky Mount. They usually drive their automobiles to and from their work; and on or about 12 September, 1924, at the time of their arrest, they were operating their automobiles upon the streets of the said city, and they had not been examined nor obtained the driver's license as required by the aforesaid ordinance."

Upon his Honor's construction of the statute, the jury returned a verdict of guilty; and from the judgment each of the defendants appealed, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Nash and Thorp & Thorp for the State.*
*H. D. Cooley and J. A. Edgerton for defendants.*

ADAMS, J.   The ordinance affects three classes of persons: (1) residents; (2) nonresidents who conduct a business, practice a profession, or are employed in the city; (3) those who remain in the city for more than thirty days.   Under the special verdict, the defendants are treated as falling within the second class; their homes are outside the corporate limits, but they are employees of a railroad company, whose shops are within the city, and they regularly drive their cars to and from the place in which they work.   When arrested they were driving upon the streets of the city without a license.

The defendants, as we understand, do not controvert the power or authority of the aldermen to enact a valid ordinance regulating the grant of a chauffeur's license (Private Laws 1907, ch. 209, sec. 39 *et seq.; Thompson v. Lumberton,* 182 N. C., 260), but they rest their exceptions on the contention ·that the ordinance in question is invalid as to all persons embraced in the second enumerated class.

They insist, first, that the ordinance is unreasonable, because, if a license may be required of them, it may be required of any person driving a car into the city for any cause or for any period of time; but this reasoning does not commend itself to our approval.   It is obvious that the board of aldermen never contemplated the imposition of an examination for a driver's license upon all who might enter or pass through the city; and it is equally obvious that the ordinance does not apply to cases of this kind.

They further contend that, as the special verdict does not fix the duration of their employment, they occupy the position of those who casually drive their cars into the city for a temporary purpose, and are therefore not within either of the specified classes; but the test of inclusion is not the duration of their employment, but their .presence as employees and the ʼoperation of their cars in the city.   They go there by virtue of a contractual obligation to do certain work which requires their presence at the railroad shops within the corporate limits day after day for a period definite or indefinite.   Driving their cars inside the corporate limits is an incident, perhaps an essential incident, of the business relation which they have voluntarily assumed; and if so, they may not' successfully claim exemption from the inhibition of the ordinance

STATE *v.* DENSON.

merely on the ground that while their days are passed within, their nights are spent without, the corporate limits. In *Whitfield v. Longest,* 28 N. C., 268, *Nash, J.,* said: "It is very certain that the legislative acts of the commissioners of a town are and must be limited to, and can have no effect beyond, the limits of the corporation; but the proposition is not true that none are bound by them but those who, in common parlance, are inhabitants of the town. All who bring themselves within the limits of the corporation are, while there, citizens, so as to be governed by its laws. If this were not so, those town laws or police regulations, so absolutely necessary and useful, would be entirely nugatory. No matter how important and necessary, whether to the health or peace of the town, or to the supply of its inhabitants with their daily provisions, they might be set at defiance, so far as the police of the town was concerned, by any individual who was not a corporator." And in *Wilmington v. Roby,* 30 N. C., 250, *Chief Justice Ruffin* observed: "It is settled that by coming within the town and acting there, a person becomes liable as an inhabitant and member of the corporation." The defendants, by accepting employment in the city and doing their work there, bring themselves within the class described in the ordinance as "employed in said city." *Comrs. v. Capeheart,* 71 N. C., 156.

The defendants say, in addition, that the ordinance is discriminatory and therefore unenforcible; but this position, we think, cannot be upheld. Of course, if a municipal ordinance appears upon its face to be discriminatory, or oppressive, or unreasonable, it will not be enforced; but ordinarily there is no discrimination where the impeached provision relates to all of a class. McQuillin states the rule in this language: "Laws relating to persons and things as a class, and not to persons or things of a class, are common, and usually sustained. The law will be held valid if it operates equally upon all subjects within the class for which the rule is applied. It thus follows that local police regulations are not to be condemned because not specifically aimed at all persons in whatever business engaged, as they may have an express design of reaching certain classes in certain characters of work." Municipal Ordinances, sec. 193 *et seq.* "The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint, because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws."—*Mr. Justice Field,* in *Soon Hing v. Crowley,* 113 U. S., 703; 28 Law Ed., 1145.

See, also, *Ins. Co. v. Hale,* 219 U. S., 307, 319; 55 Law Ed., 229, 236; *Reinman v. Little Rock,* 237 U. S., 171, 177; 59 Law Ed., 900, 903; *Booth v. Indians,* 237 U. S., 391, 395; 59 Law Ed., 1011, 1016. The principle has often been applied by this Court. *Gatlin v. Tarboro,* 78 N. C., 119; *S. v. Powell,* 100 N. C., 525; *S. v. Moore,* 104 N. C., 714; *S. v. Pendergrass,* 106 N. C., 664; *Rosenbaum v. New Bern,* 118 N. C., 83; *S. v. Carter,* 129 N. C., 560; *Lacy v. Packing Co.,* 134 N. C., 567, affirmed in 200 U. S., 226; 50 Law Ed., 451; *S. v. Danenberg,* 151 N. C., 718; *S. v. Lawing,* 164 N. C., 492; *Stone v. Texas Co.,* 180 N. C., 546; *S. v. Vanhook,* 182 N. C., 831.

It is contended that, owing to the provisions of the Public Laws of 1921, ch. 2, sec. 29, the ordinance is without legislative sanction. It will be noted, however, that the second proviso has reference to the privilege of operating a motor vehicle, while the third provides for regulating, licensing and controlling chauffeurs and drivers. We cannot concur with the defendant in construing the words, "any such car," in the third proviso, as restricting the driver's license to cars on which the privilege tax is laid. This construction would make the one tax entirely dependent upon the levy of the others. In our opinion, this was not the legislative intent. See *Thompson v. Lumberton, supra,* p. 265.

We find
No error.