STATE *v.* DIXON.

---

### STATE v. W. J. DIXON.

(Filed 1 March, 1939.)

**1. Statutes § 2—Real Estate License Act seeks to "regulate" the trade.**

It is apparent from the provisions of the Real Estate License Act, ch. 292, Public Laws of 1937, that its purpose is to provide for the extensive and intensive regulation of the trade, and to provide for the licensing and the revocation of licenses for cause of real estate brokers and salesmen within the territory affected by the act.

6—215

**2. Same—Real estate brokers and salesmen are engaged in "trade" within the meaning of Art. II, sec. 29, of the State Constitution.**

In its broadest sense "trade" includes any employment or business engaged in for gain or profit, and real estate brokers and salesmen, as defined by sec. 2, ch. 292, Public Laws of 1937, are engaged in "trade" within the meaning of that term as used in Art. II, sec. 29, of the State Constitution, prohibiting the General Assembly for passing any local, private, or special act regulating trade.

**3. Same—Real Estate·License Act is local statute regulating trade in contravention of Art. II, sec. 29, of the State Constitution.**

Ch. 292, Public Laws of 1937, providing for the licensing and regulation of real estate brokers and salesmen and imposing a license tax on those engaged in the trade in addition to the tax imposed by the Revenue Act for a State-wide license, is applicable to only a limited territory and specified localities, sixty-four counties being specifically exempted from the act by section 18 thereof, and the act is therefore a local act regulating trade in contravention of Art. II, sec. 29, of the State Constitution, and is void, and a motion in arrest of judgment made by a defendant convicted of engaging in the trade in violation of the provisions of the act, is properly allowed.

**4. Same: Statutes § 5c—Distinction between "local, private, or special" acts and "general" acts.**

In determining whether a statute relating to matters enumerated in Art. II, sec. 29, of the State Constitution is a "local, private, or special" act inhibited by this section or a "general law" which the General Assembly has the power to enact, the courts will look beyond the form of the act and ascertain whether the statute, in fact, is generally and usually applicable throughout the area comprising the State.

**5. Constitutional Law § 6b—**

It is the duty and function of the Supreme Court to declare void acts of the General Assembly which plainly violate the basic, organic law of the Constitution.

**6. Statutes § 12—Real Estate License Act held void as local act in conflict with the general law embodying State-wide licensing policy.**

All acts of the same session of the General Assembly on the same subject are to be construed as one act, and the Revenue Act of 1937, ch. 127, sec. 109, Public Laws of 1937, imposing a tax on real estate brokers and salesmen for a State-wide license, embodies the licensing policy of the State to be applied uniformly throughout the State, and ch. 292, Public Laws of 1937, imposing a further license tax on real estate brokers and salesmen within the restricted area specified in the act, is void as being in derogation of the general licensing policy of the State as expressed in the Revenue Act. *S. v. Warren,* 211 N. C., 75, cited as controlling; *S. v. Lockey,* 198 N. C., 551, cited and distinguished.

**7. Constitutional Law § 13—Real Estate License Act held void as discriminating within a class.**

The Real Estate License Act, ch. 292, Public Laws of 1937, which imposes an additional license tax on those real estate brokers and salesmen engaging in the profession or trade within the restricted area speci-

fied in the act *is held* void as discriminating within a class, since all real estate brokers and salesmen engaged in the profession or trade within the State are required to obtain a State-wide license, and only those engaged in the business within the counties affected by the local act are required to obtain the additional license. *S. v. Warren*, 211 N. C., 75, cited as controlling.

**8. Appeal and Error § 49—**

The doctrine of *stare decisis* requires that decided cases should be given great weight when the same points again come up in litigation in the same jurisdiction, and that the Court should not swerve or depart from the prior decisions from any private sentiments or judgment.

**9. Same—**

The fact that a decision is of recent date does not affect the application of the doctrine of *stare decisis*.

BARNHILL, J., concurring.

DEVIN, J., dissenting.

SCHENCK and SEAWELL, JJ., concur in dissent.

APPEAL by State from *Burgwyn, Special Judge,* at August Regular Term, 1938, of MECKLENBURG. Affirmed.

Defendant, by warrant, was charged with the violation of the N. C. Real Estate License Act (chapter 292, Public Laws of N. C., 1937).

From a conviction in the recorder's court of the city of Charlotte, he appealed to the Superior Court. Upon the return of the jury therein with a verdict of guilty, defendant moved in arrest of judgment on the ground that said N. C. Real Estate License Act is unconstitutional. The judge below allowed the motion and entered an order arresting judgment, to which the State excepted, assigned error and appealed to the Supreme Court. The State is permitted to appeal "upon arrest of judgment." C. S., 4649 (4).

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*
*Clayton L. Burwell, amicus curiæ.*
*H. L. Taylor for defendant.*

CLARKSON, J. The purpose of chapter 292, Public Laws 1937, is indicated by the title, "An Act to Define Real Estate Brokers and Salesmen; to Provide for the Regulation, Supervision and Licensing Thereof; To Create a Real Estate Commission, and Prescribing the Powers and Duties Thereof; To Provide for the Enforcement of Said Act and Penalties for the Violation Thereof." That the regulation of the trade sought was intended to be both extensive and intensive is apparent from sec. 9 of the Act, in which any one of eight types of misconduct, each

defined in broad terms, is made the basis for the revocation or suspension of a real estate broker's or salesman's license. The limit to which the Act goes in an effort to control the conduct of persons engaged in trading in real estate is shown by the following statement of purpose, taken from sec. 17 of the Act: "It is the purpose of this Act to provide for the regulation and discipline of real estate brokers and salesmen doing business within the State of North Carolina to the end that the interests and welfare of the people of said State shall be safeguarded by such regulations, and the fees herein charged shall be used by the commission for the enforcement of the provisions of this Act, and shall be in addition to any and all other privilege taxes, license fees or levies, whether made by the State of North Carolina or any county, city, or town, when the same are made under authority of law." In sec. 18, sixty-four counties out of the one hundred in the State are specifically exempted from the Act.

*First.* Is this Act constitutional? We think not.

The Constitution of North Carolina provides: "The General Assembly shall not pass any *local, private, or special act or resolution. . . . regulating* labor, *trade,* mining, or manufacturing. . . . *Any local, private or special act or resolution* passed in violation of the provisions of this section shall be void." Art. II, sec. 29 (Italics ours).

The leading legal definition of "trade" is that of *Justice Bradley* in *May v. Sloan,* 101 U. S., 231, 237, as follows: "The word 'trade,' in its broadest signification, includes not only the business of exchanging commodities by barter, but the business of buying and selling for money, or commerce and traffic generally." This is cited as the basic definition in 3 Bouvier, Law Dictionary, 3rd ed., p. 3290; Black's Law Dictionary, 3rd ed., p. 1744; and Ballentine's Law Dictionary, p. 1291. The same definition has been cited with approval by this Court in *S. v. Worth,* 116 N. C., 1007, 1010, and *Lewis v. Murray,* 177 N. C., 17, 19, and a similar definition was followed by *Douglas, J.,* in *S. v. Hunt,* 129 N. C., at p. 690. In *S. v. Worth, supra,* it was said, in part: "The word trade is . . . interpreted as comprehending not only all who are engaged in buying and selling merchandise but all whose occupations or business it is to manufacture and sell the products of their plants. It includes in this sense any employment or business embarked in for gain or profit." The last sentence of this definition is quoted with approval by *Allen, J.,* writing for the Court, in *Smith v. Wilkins,* 164 N. C., 136 (140). When so defined, we think that real estate brokers and salesmen, as defined by sec. 2 of the License Act here considered, are engaged in "trade" within the meaning of Art. II, sec. 29, N. C. Constitution. As was said in *Finnegan v. Noerenberg,* 52 Minn., 239, 245, 53 N. W., 1150, 18

L. R. A., 778: "Giving a reasonably liberal meaning to the word 'trade' in the Act, it would include the buying and selling of real estate. . . ." Accordingly, real estate brokers and salesmen being engaged in "trade," if the present act is a local, private, or special act, it is void.

In the case of *In re Harris,* 183 N. C., 633 (637), *Hoke, J.,* for the Court, declared: "We are of opinion, as stated, and so hold, that on the case we have before us (a recorders' court act exempting forty-four counties), where the Legislature, in the plain endeavor to comply with the constitutional limitation, has passed an act establishing a general statute for the establishment of these courts, applicable to more than one-half the counties in the State, the principle of the New York decision affords a better and wiser rule of interpretation, and must be allowed as controlling on the validity of the present law." The New York rule referred to was there quoted from *People ex rel. v. The New-burgh Plank Road Co., et al.,* 86 N. Y., 117, as follows: "A local act is one operating only in a limited territory or specified locality. It could not be said with propriety that a territory comprising nearly the whole State was merely a place or locality. An act operating upon persons or property in a single city or county, or in two or three counties, would be local. But how far must its operation be extended before it ceases to be local? To determine this, no definite rule can be laid down, but each case must depend upon its own circumstances." Tested by the rule of the *Harris case,* it is apparent that the present act applies to only a "limited territory" (the area occupied by only one-third of the counties) and to only "specified localities" (the geographical limits being limited to that encompassed by the boundaries of only thirty-six counties). The *Harris case* indicated the proper test, not of a public law, but of a "general" public law. That test, there applied, pronounced a law which exempted forty-four out of one hundred counties to be a valid, "general" law; that same test, here applied, pronounces a law which exempted sixty-four out of one hundred counties to be invalid as not constituting a "general" law. 25 R. C. L., "Statutes," secs. 65 and 66; *S. v. Johnson,* 170 N. C., 685 (692). The *Harris case, supra,* properly recognized that as to the particular types of legislation described in Art. II, sec. 29, of our Constitution, all legislative enactments are to be classified in one of the two classes: (1) "Local, private or special" acts which are "void," or (2) "general laws" which the General Assembly has "power to pass." The *Harris case* is likewise authority for looking beyond the mere form of an act to determine whether it is in fact a public, general law; this Court will look beyond such surface superficialities when there has been what *Hoke, J. (In re Harris, supra)* describes as "a palpable attempt to evade the constitutional restriction." Since such an act as the present

one can not, accurately, be said to be generally and usually applicable throughout the area comprising the State, necessarily follows that it falls within the class described by the words "local, private or special" acts. The plain, expressed requirement of our Constitution is the laws "regulating . . . trade" shall be "general laws"; the present act contravenes this constitutional mandate, and is, accordingly, "void." This Court would be remiss in discharging its proper function if it did not pronounce unconstitutional those acts of the General Assembly which plainly violate the basic, organic law of the Constitution; if it fails in this primary duty the fundamental guaranties of the Constitution become but vain delusions and that bed-rock charter of rights and duties rapidly disintegrates into, to quote Macaulay, "A thing to be appealed to by everybody and understood by everybody in the sense which suits him best."

*Second.* Is the N. C. Real Estate License Act, which applies to only thirty-six counties in the State, invalid as conflicting with the general State-wide policy of the current Revenue Act? We think that the act fails in this respect also.

Chapter 127, sec. 109, Public Laws of 1937, provides that real estate brokers and salesmen "shall apply for and obtain from the Commissioner of Revenue a *State-wide license* for the privilege of engaging in such business or profession." This same section of the Revenue Act regulates the license taxes required of attorneys, physicians, dentists, occulists, engineers, and the members of a number of other professions or trades. Chapter 292, Public Laws of 1937, attempts to impose a further license tax on real estate brokers and salesmen, declaring that the practice of the profession or trade without such additional license shall constitute a misdemeanor. It is this latter act which is here declared invalid.

The decision of this Court in *S. v. Warren,* 211 N. C., 75, narrowly limits the range of necessary, judicial inquiry in the instant case. In that case a real estate brokers' licensing act, similar to the present but applicable to only eleven counties, was declared unconstitutional. Although the majority opinion there adverted to the broader question as to whether such a licensing act falls within the permitted range of the police power (which question was expressly reserved for future determination), the real *ratio decidendi* was that the act affected only a portion of the State and was in contravention of rights, granted on a State-wide basis, by the controlling general statute. In the *Warren case, supra,* at p. 79, it was stated: "Real estate dealers who have licenses from the State are not confined to any particular county in the State to do business. Attorneys at law, physicians, etc., are not confined to any par-

ticular county to practice their professions in this State. Suppose certain counties would set up, as the present act does for real estate dealers, that attorneys at law, physicians, etc., could not practice their professions unless complying with the terms of a special act like the one in controversy, we would unhesitatingly say the act was unconstitutional—as we do in this case."

The opinion in the *Warren case* is controlling in the instant case. Decided cases should be regarded as weighty authority, at least within the Courts which decided them. As Broome puts it in that veritable storehouse of legal learning, Legal Maxims, "It is, then, an established rule to abide by former precedents, *stare decisis,* where the same points come up again in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion, as also because, the law in that case being solemnly declared and determined what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or swerve from according to his private sentiments; he being sworn to determine, not according to his private judgment, but according to the known laws and customs of the land—not delegated to pronounce a new law, but to maintain and expound the old one—*jus dicere et non jus dare."* Legal Maxims, 8th ed., p. 147. Nor can it be argued that the *Warren case* is so recent that it may be disregarded without serious disturbance to the body of the law. "The mere lateness of time at which a principle has become established is not a strong argument against its soundness, if nothing has been previously decided inconsistent with it, and it be in itself consistent with legal analogies." *Ibid.,* p. 152. The *Warren case* laid down the proposition that whenever the General Assembly has, by a general act of State-wide application, adopted a specific licensing policy to be applied uniformly throughout the State with respect to a particular occupation, a local act in derogation of the general act must fail. The reason for this rule is apparent; all acts of the same session of the General Assembly on the same subject are to be considered as one act (*Wilson v. Jordan,* 124 N. C., 683) and effect given to all provisions if this can be done upon any fair hypothesis (*State Board v. Drainage District,* 177 N. C., 222; *Bank v. Loven,* 172 N. C., 666) with the use of all reasonable means to arrive at the legislative intent (*S. v. Partlow,* 91 N. C., 550), but subordinate aims where inconsistent must yield to primary intent and local wishes must yield to general, State-wide policies. The soundness of this rule has been indirectly approved by statute sec. 397 (a), N. C. Code of 1935 (Michie); there it is provided that no act, purporting by its caption to be a public-local or private law, which attempts to repeal, alter, or change the pro-

visions of a public law, shall accomplish this purpose unless the very caption of the act expressly refers to the public law which will be affected by its provisions. There, as here, the necessity of safeguarding the field of public law against encroachments through local measures is clearly recognized.

The sound distinction recognized in the *Warren case, supra*—and one which we think determinative in the instant case—is that there is a vast difference between an act which places a like burden upon every member of a trade or profession in every county in the State and one which places a burden upon some members of a trade or profession who have a State-wide license but not upon all of them. This is peculiarly true of dealers in real estate, who, by the very nature of land, are confined largely to small, geographic areas with which they are familiar. The distinction is not merely one between general law and local law; the question is whether discrimination will be permitted among members of a trade or profession when all the members have previously been granted State-wide licenses to practice that trade or profession. A general and State-wide policy has been written into sec. 109 of the Revenue Act. The State has laid down specific requirements for a State-wide license to practice this trade or profession and the defendant has complied therewith and has been granted such license. Now, the General Assembly, by a law effective as to a limited area of the State, in effect revokes that license as to the particular areas involved. All real estate brokers in the State are required to pay the State privilege tax and all are subject to the same general laws in the conduct of their trade; yet, if the provisions of the instant act be upheld, a real estate broker who had paid his State tax would be deprived of the privilege of carrying on his trade in more than one-third of the counties in the State. For example, a broker seeking to sell a farm lying in two counties would be merely an honest business man conducting a legitimate business if the transaction were completed on one corner of the farm, but would be criminal if it were completed at another point on the same farm. The fatal shortcoming of the 1927 Real Estate Brokers' Act was not so much that it was a local act as it was that the act discriminated *within* a class, to wit: the real estate brokers licensed to do business throughout the State. In the words of *Justice Field* in *Soon Hing v. Crowley*, 113 U. S., 703 (709) : "The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of laws." This statement, supported by similar views at other times from the

United States Supreme Court and this Court, was cited with approval by *Adams, J.,* in *S. v. Denson,* 189 N. C., 173 (175). This fatal defect of the 1927 act is likewise present in the instant act; accordingly, the 1937 Real Estate Brokers' Licensing Act is found wanting when measured by the constitutional requisites set forth in *S. v. Warren, supra.*

In *S. v. Divine,* 98 N. C., 778 (783), *Chief Justice Smith* wrote: "An Act divested of any peculiar circumstance, and *per se* made indictable, should be so throughout the State, as essential to that equality and uniformity which are fundamental conditions of all just and constitutional legislation." In the same case, in which an act applicable to only twelve counties and making conduct, otherwise innocent, a misdemeanor, was declared unconstitutional. The statement of *Justice Field* that "No greater burdens should be laid upon one than are laid upon others in the same calling and condition" was quoted with approval. See *Barber v. Connelly,* 113 U. S., 31. Likewise, in *S. v. Fowler,* 193 N. C., 290 (293), in which a criminal law changing the punishment in prohibition offenses committed in five counties was declared unconstitutional, *Adams, J.,* wrote: "But the statute under consideration cannot be sustained on the ground that it was enacted in the exercise of the police power. The question is whether it shall supersede 'the law of the land' —the general public law which was designed to operate without exception or partiality throughout the State." When the General Assembly, in a public measure, has laid down a controlling principle to be applied uniformly and generally throughout the length and breadth of the State in solving difficulties arising within a particular field of the law, local measures in contravention of that public measure must yield to the demands of the broader and more fundamental policy when an irreconcilable conflict appears. This principle is applicable with peculiar force when the public law in question indicates in express terms, as here, that the policy of the law involves its application, unimpaired, on a State-wide basis. Sound policy demands that when the General Assembly has adopted a general and uniform plan or policy to be applied consistently throughout the State, local measures which tend to disrupt or destroy that plan must yield to the more basic demands of general, State policy. The policy of the general "law of the land" prevails over that of a contrary, local act.

Cases, such as the instant case, in which the operation of the local measure would seriously impair or partially destroy the uniform and general application of a public law expressly designed for State-wide application, are not to be confused with those cases upholding local acts in those fields of the law in which no general, State-wide policy to the

contrary has been expressly adopted. Notable among the cases of the latter type are the cases of an earlier period dealing with the regulation of intoxicating liquors, such as *S. v. Joyner,* 81 N. C., 534; *S. v. Stovall,* 103 N. C., 416; *S. v. Barringer,* 110 N. C., 525; *S. v. Snow,* 117 N. C., 778; *Guy v. Commissioners,* 122 N. C., 471; and *S. v. Herring,* 145 N. C., 418. Also to be noted are those cases, such as *Intendant v. Sorrell,* 46 N. C., 49, and *S. v. Moore,* 104 N. C., 714, which upheld local laws regulating the measuring to be used in the sale of agricultural products. Nor does the principle here expressed run counter to that line of cases, of an earlier period, dealing with a wide variety of subjects which, at the time of those cases, were considered matters properly subject to regulation by local laws. The following examples may be so characterized: *S. v. Wolfe,* 145 N. C., 445 (education and schools); *Broadfoot v. Fayetteville,* 121 N. C., 419 (stock running at large); *S. v. Pendergrass,* 106 N. C., 664 (sale of meat); *S. v. Warren,* 113 N. C., 683 (use of profanity); *S. v. Jones,* 121 N. C., 616 (payment of taxes); *S. v. Sharp,* 125 N. C., 628 (work on public roads); *Lumber Co. v. Hayes,* 157 N. C., 333 (cutting timber); *S. v. Dawson,* 189 N. C., 173 (ordinance requiring drivers' license of non-resident, as well as resident, drivers); and *Reed v. Engineering Co.,* 188 N. C., 39, and *Kenilworth v. Hyder,* 197 N. C., 85 (creation of sanitary districts).

Nor was the decision of this Court in *S. v. Lockey,* 198 N. C., 551, contrary to what is here said. In that case the apparent conflict between two State-wide acts—the Revenue Act and the Barbers' Act—was resolved by giving full effect to both acts, both being public acts expressive of general, State-wide policies. There the two acts standing together *in pari materia* were expressive of a single and State-wide policy; here there is but one act—the Revenue Act—setting forth a State-wide policy; the Real Estate Licensing Act (applicable to a relatively small area) being in conflict with the general act, and the policy set forth therein. Reference to the record and the briefs in the *Lockey case* make it clear that what was said in that case related not to the question dealt with here, but to the application of the doctrine of estoppel against the State, with an incidental allusion to the amount of the fees charged as not being unreasonable. Likewise, nothing said in *S. v. Lockey, supra,* or in *Roach v. Durham,* 204 N. C., 587, with respect to the power of the General Assembly to fix reasonable classifications in police measures is applicable here, as neither of those cases turned upon the conflict of a local statute with a general statute; furthermore, both of those cases dealt with general acts which incorporated minor exceptions and the comments in those cases merely upheld the validity of such exemptions as being insufficient to render void acts which were otherwise valid.

The able brief for the State and the argument of *amicus curiæ* were persuasive but not convincing.

For the reasons given, the judgment of the court below is
Affirmed.

BARNHILL, J., concurring: The majority opinion discusses Art. II, sec. 29, of the Constitution, upon the theory that it divides legislation into two classes: "Local, private or special," and "general." But, in discussing the particular legislation under consideration, it deals with the act upon the basis that it is local. While it may be that every local act may be classified as "special," every special act is not necessarily "local." For that reason, while I concur in the majority view that the legislation is local in nature, I am persuaded to add a few words of discussion concerning the legislation as a special act.

The commonly accepted definition of a general law as distinguished from a special or local law is that it is a law that embraces a class of subjects or places and does not omit any subject or place naturally belonging to such class. A law is general in the constitutional sense when it applies to and operates uniformly on all members of any class of persons, places or things requiring legislation peculiar to itself in matters covered by the law. *People v. Borgeson,* 335 Ill., 136, 166 N. E., 451.

On the other hand, a special statute is one which does not include all of the persons within a given class, but relates to less than all the class, or one which relates and applies to particular members or a particular section of a class, either particularized by the express terms of the act or separated by any method of selection from the whole class to which the law might but for such limitation be applicable. *Arps v. State Highway Commission,* 90 Mont., 152, 300 P., 549; *City of Springfield v. Smith,* 322 Mo., 1129, 19 S. W., 2nd Ed., 1; *State ex rel. Powell v. State Bank,* 80 A. L. R., 1494; *R. R. v. Cherokee County,* 177 N. C., 86.

The term "special" in the constitutional provision prohibiting special laws in respect to certain subjects means laws imposing particular burdens or conferring special rights, privileges or immunities upon a portion of the people of the State without including therein and being applicable to all of the class throughout the State. *Matthews v. City of Chicago,* 342 Ill., 120, 174 N. E., 335.

The legislation under consideration is general in its terms and applies to real estate brokers and salesmen as a class. Its caption provides that it is "an act to define real estate brokers and salesmen; to provide for the regulation, supervision and licensing thereof; etc."; and in sec. 17 the purpose of the act is declared to be: "To provide for the regulation

and discipline of real estate brokers and salesmen doing business within the State of North Carolina to the end that the interest and welfare of the people of said State shall be safeguarded by such regulation." Thus, it appears that the purpose of the act is to regulate the trade of real estate brokers and salesmen, and that the legislature grouped the real estate brokers of the State as a whole into a class sufficiently distinguished by characteristics to make it the subject of legislation. However, notwithstanding the declared intent of the Legislature to deal with real estate brokers and salesmen as a class throughout the State, the act by sec. 17½ exempts from the operation thereof 64 counties. It appears, therefore, that the act does not apply to real estate brokers and salesmen throughout the State as a class, notwithstanding the declared purpose of the Legislature. The lawmaking body made a reasonable classification of citizens and then, by the express terms of the act, excluded from its operation a large portion of the class. To my mind, this alone stamps the legislation as special, brings it within the prohibitive provisions of Art. II, sec. 29, of the Constitution, and makes it invalid.

It may be conceded that the lawmaking body enacted the statute upon the theory that it was beneficial to the people of North Carolina and intended to protect the interests and promote the general welfare of the people of the State. If so, there is no sound reason why the people of the 64 excluded counties should not be protected in like manner. To regulate real estate salesmen and brokers for the protection of the people in 36 counties and to exclude the people in 64 counties from like protection clearly makes the act "special" and confers rights, privileges and immunities upon the people of the 36 counties which are denied to the people of 64 counties. If it be contended that the statute classified real estate dealers in the 36 counties included in the act as a group or class separate and apart from such dealers living in the 64 counties excluded, then the classification is arbitrary and discriminatory, without any sound basis in fact to support the classification.

I am, therefore, firmly of the opinion that the act under discussion is legislation clearly prohibited by Art. II, sec. 29, of the Constitution. It is local, it is special, the classification is arbitrary and discriminatory, and it confers upon citizens in one group of counties special rights and privileges that are denied to citizens of a larger group in direct violation of the declared purpose of the act.

The majority opinion is fully supported by *In re Harris* and by *S. v. Warren*, therein cited. While the conflict between the general licensing policy of the State and the act under consideration may be properly considered, it is not, in my opinion, essential to the determination of this cause.

STATE v. DIXON.

DEVIN, J., dissenting: I cannot agree that the act in question violates any constitutional provision. The act was within the legislative power. If it be thought that the purpose or effect of the act is unwise, the unwisdom is that of the General Assembly. The question is one of power, not expediency. The courts have no responsibility. They are without power to revise or veto acts of a coördinate branch of the State government created by the Constitution.

We must not lose sight of the fundamental principle that since all political power is derived from the people and all government originates from them (Const. N. C., Art I, sec. 2), the sovereign will of the people expressed through their chosen representatives in the General Assembly is supreme, and a law by them enacted may not be set aside by the courts unless it contravenes some prohibition or mandate of the Constitution by which the people of the State have elected to be limited and restrained, or unless it violates some provision of the granted powers contained in the Constitution of the United States.

We must also keep in mind the well settled principle that no act of the General Assembly ought to be declared violative of any constitutional provision unless the conflict is so clear that no reasonable doubt can arise. *S. v. Lawrence,* 213 N. C., 674, 197 S. E., 586; *Glenn v. Board of Education,* 210 N. C., 525, 187 S. E., 781; *Plott v. Ferguson,* 202 N. C., 446, 163 S. E., 688; *Kornegay v. Goldsboro,* 180 N. C., 441, 105 S. E., 187.

The act here called in question prescribes the qualifications of those to whom license as real estate brokers may be granted as "persons who' are trustworthy and who have good reputation for honesty, truthfulness and fair dealing, and are competent to transact the business of a real estate broker or real estate salesman in such a manner as to safeguard the interests of the public." There is no delegation of legislative powers to the board or commission created by the act. Reasonable provisions for application, for examinations, for the issuance of license upon payment of fee of ten dollars to be covered into the State treasury, for the maintenance of the commission, and for suspension, and, after due hearing, the revocation of license, are fully set out in the act.

In construing a similar statute in *Roman v. Lobe,* 243 N. Y., 51, 50 A. L. R., 1329, *Cardozo, J.,* stated with his usual clearness the basic reasons supporting regulatory provisions for real estate brokers: "The intrinsic nature of the business combines with practice and tradition to attest the need of regulation. The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains. . . . With the temptation so aggressive, the dishonest or untrustworthy may

not reasonably complain if they are told to stand aside. No less necessary are safeguards against the perils of incompetence. The business of the broker is distinct from occupations which by general acquiescence are pursued by common right without regulation or restriction." ·

Statutes regulating real estate business have been enacted in a majority of the states of the union, and in every jurisdiction where the point has been raised the power of the Legislature has been upheld, with the possible exception of Kentucky. In *Bratton v. Chandler,* 260 U. S., 110, the Tennessee statute, very similar to the North Carolina act, was held not violative of the 14th Amendment to the Constitution of the United States. And upon the authority of that case the Supreme Court of the United States later declined to review the decision of the Supreme Court of California upholding the constitutionality of the real estate brokerage act of that state. *Haas v. Greenwald,* 275 U. S., 490.

1. The principal ground of challenge of the act in question is that it violates Art. II, sec. 29, of the Constitution. It is said in the majority opinion that this act is unconstitutional because it is a local act, and within the prohibition of this section of the Constitution, in that it attempts to regulate "trade." In view of the importance of the question, let us examine the phraseology of the section more closely. The section of the Constitution referred to contains several distinct· classifications of what local acts are within its prohibition, and the clauses enumerating these classifications begin with words designating the kind and character of legislation the General Assembly is denied power to enact. The section prohibits acts "relating to" the establishment of inferior courts; "relating to" the appointment of justices of the peace; "relating to" health; "relating to" cemeteries. But when the clause, upon which the majority opinion in the case is based, is reached the word of characterization is changed. The word is "regulating" and the objects are "labor, trade, mining or manufacturing." Doubtless the framers of this section concluded that .the words "relating to trade" would have been too comprehensive, and an undue limitation upon the power of the General Assembly. It is not when the local act merely "relates to" a business, but when it undertakes to "regulate" trade that it falls under the condemnation of this section of the Constitution.

Is the real estate brokerage business to be considered a trade within the meaning of this restrictive clause of the Constitution when the word is used in association with the word "labor" and "mining?" If so, does the act purport to "regulate" that trade? The act merely prescribes the qualification of persons who may enter upon and engage in that business. It does not undertake to regulate it. The power to regulate a business is the power to prescribe the rules by which it shall

be governed.  *U. S. v. Knight Co.,* 156 U. S., 1; *Schechter v. U. S.,* 295 U. S., 495. A similar statute prescribing the qualifications of those entitled to enter upon and continue in the trade of plumbing, though the act applied only to the larger. cities in less than half of the state, was held constitutional.  *Roach v. Durham,* 204 N. C., 587, 169 S. E., 140.

2. Is the Real Estate License Act a local act?

The ground upon which the majority opinion rests the conclusion that this act violates Art. II, sec. 29, is that it is a local or special act and not a general law.  This seems in conflict with the decision of this court in *In re Harris,* 183 N. C., 633, 112 S. E., 425.  In that case an act relating to the establishment of courts inferior to the Superior Court, which applied to only fifty-six counties, was upheld as a general and not a local act.

The Court, when it wrote *In re Harris,* 183 N. C., 633, had the advantage of the same bibliography consulted and referred to in the majority opinion of the Court, and from which definitions of "general," "special," and "local" laws are quoted, and the Court in rendering decision in that case fully understood then, as we do now, that these definitions are not uniform.

Hence the case at bar is narrowed down to a consideration of whether the Court may find a distinction between *In re Harris* and the case at bar which will be sufficiently substantial to justify our action in striking down the Real Estate Brokerage Act.  In my judgment, no such distinction exists.

The two acts—the one upheld in that case and the one now attacked— are identical in the method of enactment.  Many counties are excepted from each.  They are identical in that they do not apply to the whole State and do not affect in any manner citizens of the State outside of the territory to which they apply.

As to the General Inferior Courts Act, a person in the excepted territory is not in any way touched by the jurisdiction of the court until he goes within the territory to which they apply and violates some law which puts him within the jurisdiction of those courts.  As to the Real Estate Brokers Act, a citizen outside of the territory to which it applies likewise is totally unaffected until he comes within that territory and does some of the acts or things therein specified.

The general rule, which has been uniformly followed in this State, is succinctly and accurately stated in 59 C. J., 730, as follows: "It is not necessary that a law, in order to be general, shall affect all of the people of the State, or all of the State, nor need it include all classes of individuals; it may be intended to operate over a limited number of

persons or things, or within a limited territory   .   .   ." And on page 733 of the same volume, it is said: "A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special."

In *Southern Railway Co. v. Cherokee County,* 177 N. C., 86, 97 S. E., 758, this Court said: "To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State. All that is required is that it shall apply equally to all persons within the territorial limits described in the act."

So that in the last analysis the question of the constitutionality of the statute here attacked resolves itself into this: Can the Legislature by a general statute, valid and constitutional in every other respect, be overthrown because some counties are excepted from the provisions of the act? If the exception of sixty-four counties destroys the act, would twenty-five, would ten, would one? Where is the line to be drawn?

It seems to me that the question of the power of the Legislature to enact general laws applicable to certain territory has been so often decided that it ought to be deemed settled. When the Legislature exempted seventeen counties from the State-wide prohibition act, this Court repeatedly declined to hold it violative of the Constitution. *S. v. Davis,* 214 N. C., 787; *S. v. Lockey,* 214 N. C., 525; *Newman v. Comrs. of Vance,* 208 N. C., 675, 182 S. E., 453.

In *S. v. Moore,* 104 N. C., 714, 10 S. E., 143, it was said: "If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application, and they are then public in character, and of their propriety and policy the Legislature must judge." Quoted with approval in *Kornegay v. Goldsboro,* 180 N. C., 441, 105 S. E., 187; *Newell v. Green,* 169 N. C., 462, 86 S. E., 291.

"It (the Constitution) does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subject to such legislation shall be treated alike under like circumstances and conditions, both in privileges conferred and liabilities imposed." Cooley Const. Lim. (8th ed.), pp. 824-825.

"Laws public in their object may, unless express constitutional provisions forbid, be either general or local in their application. The Legislature must determine whether particular regulations shall extend to the whole State or to a subdivision of the State." Cooley Const. Lim. (8th ed.), pp. 803-804.

"To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State. All that is required is that it shall apply equally to all persons within the

territorial limits described in the act. *Power Co. v. Power Co.,* 175 N. C., 668, 96 S. E., 99; *S. v. Barrett,* 138 N. C., 630, 50 S. E., 506.

In *S. v. Barrett, supra, Connor, J.,* speaking for the Court, uses this language: "This power (to pass statutes of local application) has been so long recognized by the Court and exercised by the Legislature that we do not deem it necessary to examine the foundations upon which it rests."

"Legislation, which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the Amendment (14th Amendment to Constitution of U. S.). *Barbier v. Connolly,* 113 U. S., 32. It merely requires that all persons subject to such legislation shall be treated alike. *Hayes v. Missouri,* 120 U. S., 71." *Broadfoot v. Fayetteville,* 121 N. C., 418, 28 S. E., 515.

In Connor and Cheshire's Constitution of North Carolina we find on page 14 this expression of the law: "A public-local act making that an offense in one district which is not an offense in another, is a constitutional exercise of the police power and not in violation of Art. I, sec. 7, if it bears alike on all persons in a defined locality," citing *S. v. Stovall,* 103 N. C., 416, and *S. v. Moore, supra.*

In *S. v. Blake,* 157 N. C., 608, 72 S. E., 1080, it was said: "Public-local acts passed in the exercise of the police power which apply only to certain localities are valid." And *Clark, C. J.,* cites many cases in which it has been so held. *S. v. Joyner,* 81 N. C., 537; *McCormac v. Comrs.,* 90 N. C., 441; *S. v. Barringer,* 110 N. C., 525, 14 S. E., 781; *S. v. Snow,* 117 N. C., 774, 23 S. E., 322; *Lyon v. Comrs.,* 120 N. C., 237, 26 S. E., 929; *Harriss v. Wright,* 121 N. C., 172, 28 S. E., 269; *Guy v. Commissioners,* 122 N. C., 471, 29 S. E., 771; *Tate v. Commissioners,* 122 N. C., 812, 30 S. E., 352; *Lumber Co. v. Hayes,* 157 N. C., 333, 72 S. E., 1078; *Reed v. Engineering Co.,* 188 N. C., 39, 123 S. E., 479; *S. v. Denson,* 189 N. C., 173, 126 S. E., 517; *Kenilworth v. Hyder,* 197 N. C., 85, 147 S. E., 736.

3. It is suggested in the majority opinion that the act is invalid because in conflict with the State-wide policy of the Revenue Act. But declarations of policy are matters for the General Assembly and not for the courts. The General Assembly has spoken in the Real Estate License Act. Shall the courts declare otherwise?

Nor may the act be attacked on the ground that since real estate brokers are taxed with other professions under the general Revenue Act (sec. 109, chap. 127, Public Laws 1937), they would be deprived of doing business in the counties within the act unless they paid the additional license fee required by the act. The same situation exists as to many other professions and trades taxed by sec. 109, as, for instance,

lawyers, chiropractors, barbers, photographers, etc. In the last case on this subject considered by this Court, *S. v. Lawrence,* 213 N. C., 674, 197 S. E., 586, where the act establishing a Board of Photographic Examiners with regulations and license fees was upheld as valid and constitutional, photographers were already taxed under sec. 109. In *S. v. Lockey,* 198 N. C., 551, 152 S. E., 693, construing the Barber's Act, the distinction between the two statutes was pointed out and the constitutionality of that act upheld. In the *Lockey case* the same objection as that referred to in the majority opinion in this case was raised by the constitutionality of the Barber's Act, but this Court dismissed the contention as "untenable," and definitely settled the point by the use of this language: "The annual occupation tax of the Revenue Act is for the privilege of exercising the trade of barbering and is simply a revenue act, whereas the Barber's Act is an exercise of the public power of the State to secure the public welfare by requiring proven capacity in the barbers." And in *Roach v. Durham,* 204 N. C., 587, 169 S. E., 140, the same question was again decided, and the act upheld.

The view expressed in the majority opinion that this act is invalid because of the general occupational privilege tax imposed on real estate brokers by sec. 109 of the Revenue Act, would seem in conflict with the previous decisions of this Court in these and other cases.

4. The power of the Legislature to create boards to require license fees and regulate certain professions and occupations affected with a public interest has been uniformly upheld by this Court and the question of the constitutionality of acts of this character seems well settled. *S. v. Lawrence,* 213 N. C., 674, 197 S. E., 586; *S. v. Lockey, supra; Roach v. Durham, supra.*

In *S. v. Warren,* 211 N. C., 75, 189 S. E., 108, chap. 241, Public-Local Laws of 1927, was held invalid because that act purported to apply only to eight counties, but in that case the power of the Legislature to "make reasonable regulations in regard to the real estate business" was expressly upheld. And in *S. v. Lawrence,* 213 N. C., 674, where the act establishing a State Board for regulating the practice of photography, with requirement of license fee before engaging in that business, was held constitutional, the same language was quoted with approval. "It is uniformly held that requirement of license fees from real estate brokers and regulations subjecting those of that profession or business to tests of character and competency in the interest of the public are within the power of the State Legislatures." (Cooley Const. Lim. [8th ed.], 1332).

5. The act is not discrimatory. It operates equally upon all subjects within the same class. All real estate brokers within the act are

subject to the same restrictions under the same conditions (*S. v. Denson, supra*). All brokers within the territory, and all brokers outside its limits, who, for the purpose of conducting a brokerage business, go into any of the counties not exempted, are treated exactly alike. The license fee fixed by the act cannot be said to violate the rule of uniformity. *Roach v. Durham, supra.*

The rule of *stare decisis* here invoked on account of the holding in *S. v. Warren, supra,* is inapplicable. That rule—meaning to stand by precedent and not disturb settled points—applies only where the Court has announced certain controlling principles of law or given a construction to a statute upon which individuals and the public have relied in making contracts. It is a species of judicial estoppel. In the *Warren case* the Court considered a public-local law applicable only to eight counties. Here we construe a different law, enacted by another Legislature, embodying a general statute applicable to the entire State, from the operation of which certain counties were excepted. The legal principles involved are not the same.

The reasons marshalled in support of the majority opinion are ably presented, but in my opinion should not prevail. The effort to distinguish this case from *In re Harris,* and from *S. v. Lockey* and *Roach v. Durham* is unconvincing. The effect is by implication to overrule those well considered cases. If the rule of *stare decisis* is to be invoked, it should be held applicable to those cases.

6. The cases cited in the majority opinion, *S. v. Worth,* 116 N. C., 1007; *S. v. Hunt,* 129 N. C., 686; and *Smith v. Wilkins,* 164 N. C., 135 (*Lewis v. Murray,* 177 N. C., 17, is not in point), in which this Court interpreted the word "trade" to include any employment or business embarked in for gain or profit, were all cases decided prior to the ratification of sec. 29 of Art. II, and related to liability for occupational license taxes under the terms of the revenue statute. In none of these was the question of restricting the otherwise unlimited power of the General Assembly involved. In the latter case I apprehend a different principle of construction would be applicable.

The cases of *S. v. Divine,* 98 N. C., 778, 4 S. E., 477, and *S. v. Fowler,* 193 N. C., 290, 136 S. E., 709, cited in the majority opinion, do not, I think, support the conclusion there reached when the facts in those cases are considered. The act construed in the *Divine case* made killing of cattle by a car or engine running on a railroad a misdemeanor in certain counties. The superintendent of a railroad, who had nothing to do with the violation of the act, was indicted. It was held the act would not sustain the indictment. In my opinion this is not authority for holding that the Legislature has no power to enact a criminal statute

applicable to less than the whole State. If it does, the many cases cited in the majority opinion are to the contrary. In *S. v. Warren,* 113 N. C., 683, 18 S. E., 498, the act construed made the use of profane language in certain locality unlawful. The Court upheld conviction and used this language: "It may be urged that this is a criminal law, and hence must be uniform and take effect over the whole State. But, on the contrary, it is a police regulation, and hence may be limited in its operation to such localities as the Legislature may prescribe. The distinction between the two has been too often pointed out to require reiteration."

In the *Fowler case* a public-local law was enacted prescribing a different punishment for violation of the prohibition law in five counties from that in the general statute. The Turlington Act made the manufacture or sale of intoxicating liquor unlawful anywhere in the State, in the five counties as well as in the remainder of the State, while the public-local act, without exempting the five counties from the general law, attempted to prescribe a different punishment for the same offense when committed in the five counties. The Court said: "The principle of uniformity in the operation of a general law extends to the punishment and denounces as arbitrary and unreasonable the imposition in one county of any kind of punishment which is different from that which is prescribed under the general law to all who may be guilty of the same offense." With that statement of the law I agree, but this is not our case. Nowhere does the *Fowler case* deny the power of the Legislature to enact a law making certain acts unlawful in territory less than the entire State. Here the law acts equally upon all persons who engage in the real estate brokerage business in the territory not excepted from its provisions. The power of the Legislature to except seventeen counties from the provision of the Turlington Act and to authorize the sale of intoxicating liquor, under restrictions, therein, while it was a violation of law to do so in the other eighty-three counties, has not been denied or questioned by the majority of this Court.

7. Some of the acts creating boards for the regulation of certain occupations were made applicable only to towns and cities of certain population. In the act relative to plumbing and heating contractors, towns and cities having a population of not more than 3,500 were exempted (which by the census of 1930 would exclude more than half the counties of the State). That fact was held not to constitute a violation of the rule of uniformity or affect the validity of the act as a general law. *Roach v. Durham, supra.* In the Photography Act, cities and towns having a population of not more than 2,500 were excepted. The act was held constitutional though a number of counties were excluded from its operation. *S. v. Lawrence, supra.*

It would seem, therefore, to involve a rather strained construction to denominate a law applicable to thirty-six counties in North Carolina, including the more populous counties of Guilford, Mecklenburg, Catawba, Forsyth, Buncombe, Wake, New Hanover, Cleveland, Alamance, Rowan, Nash, and others, containing approximately one-half the population of the State, as a local act beyond the power of the Legislature to enact.

Here the purpose of the act, as it applies to the real estate brokerage business in the territory within the counties not exempted, is to set up standards of fitness and competency and to provide for proper practices in the business for the promotion of the general welfare, in order to safeguard the public from incompetency and dishonesty.

Is the unconstitutionality of the act so clear and patent that no reasonable doubt can arise? If there is a doubt about it, then according to the unbroken rule of construction of written constitutions, the doubt should be resolved in favor of the validity of the act of the General Assembly.

In my opinion the judgment of the court below should be reversed.

SCHENCK and SEAWELL, JJ., concur in this dissent.